BLANCHE HURLBUT, PLAINTIFF, *v.* FANNY T. HURL-
BUT, AS ADMINISTRATRIX, ETC., OF RICHARD W. HURLBUT,
DECEASED, DEFENDANT.

*Insurance policy — delivery of an assignment thereof — effect on such assignment of a
prior general assignment for creditors — request to go to the jury when necessary.*

A policy of insurance upon the life of one Hurlbut was issued, payable to the·
assured, his executors, administrators or assigns, the premiums upon which
were paid by him until and including May, 1887. In the September following
that date he died, having, on June tenth of that year, executed a formal
assignment of all sums of money, interest, etc., to arise by virtue of the policy
to the plaintiff in this action. The assignment was drawn and executed at the·
office of the agency of the company and was witnessed by its cashier, and was·
forwarded to the company, and a copy of it was, by the company, retained and
filèd, and thereupon the original was returned with the indorsement that if the·
assignment should be afterwards canceled the holder should return it to the com·
pany. In August of that year the assured wrote a letter to the plaintiff, who·
was his daughter, informing her of this assignment of the policy.

*Held,* that the foregoing facts showed it to be the intention of the assured to give·
the insurance, and the money resulting from it, to his daughter, he in the·
meantime designing to pay the premium and keep the insurance alive.

That to create such a gift it was necessary that a delivery of the assignment should
be made to the donee.

That it was not necessary that such delivery should be made directly to the person
intended to receive or be invested with the gift, but that it might be made to·
another person for her when it was done in such manner as to divest the posses-
sion and title of the donor That what took place concerning this insurance was·
ttended with that result.

That as the delivery to the company was intended to secure such action on its
part as would recognize the right and title of the plaintiff to the money and
place the company under obligation to pay it over to her upon the decease of the·
assured, and as its acceptance by the company was with that understanding,.
that a legal delivery of the assignment had been made to the insurance company⁻
for the benefit of the plaintiff.

That the effect of the delivery was not destroyed by the fact that the company
afterwards returned the assignments to the assignor, after it had complied with
what appeared to be essential to mature its obligation.

That the right of the plaintiff to maintain this action was not defeated by proof
that in September, 1884, a general assignment was made by a firm of which the
assured was a member, as well of the individual property of the partners as of
the firm assets, as it did not appear that the policy of life insurance was ever
passed over or delivered to the assignee, or in any manner claimed by him, but,.
on the contrary, that it remained in the possession of the assured who paid the·

FIRST DEPARTMENT, JUNE TERM, 1888.

premiums upon it, and, in this manner, had, from time to time, renewed it for his own benefit subsequent to the execution and delivery of the assignment.

That in the absence of any request that the matter should be submitted to the jury, it could not be claimed by the defendant, the administratrix of the estate of the assured, that under chapter 814 of the Laws of 1858, she was authorized for the benefit of the creditors of the intestate, to impeach the assignment on the ground that the assured was insolvent when he gave the insurance to the plaintiff, and that the assignment was void as a matter of law, as having been made with the intent to hinder, delay and defraud his creditors, as there was no proof that he was actuated with that intent, other than that arising out of the fact of his insolvency at the time of the assignment and the donation of the money to the plaintiff, which presented a question which could only be passed upon by the jury

MOTION by the defendant for a new trial on exceptions ordered to be heard in the first instance at the General Term.

*James Parker*, for the plaintiff.

*Albert Stickney*, for the defendant.

DANIELS, J.:

The disposition of the action depended upon the title to a sum of money paid into court by the Mutual Benefit Life Insurance Company in satisfaction of a policy of life insurance issued by it to and upon the life of Richard W. Hurlbut. The policy was issued in the year 1845 for the sum of $3,000 payable to the assured, his executors, administrators or assigns. He paid the premiums upon it until and including May, 1887, and he himself died in September of the same year. On the 10th of June, 1887, he executed a formal assignment of all sums of money, interest, benefit and advantage, to arise or be had by virtue of the policy to the plaintiff in this suit. And in case of her decease prior to his own then to another person and, if he also previously became deceased, then the policy was directed to revert to the assured. The assignment was drawn and executed at the office of the agency of the company and witnessed by its cashier. It was forwarded to the company and a copy of it retained and filed and thereupon it was returned, with the indorsement that if the assignment should be afterwards canceled the holder should return it to the company. In August, 1887, and after the assignment itself had in this manner been returned to the assured, he wrote a letter to the plaintiff, who was his daughter,

informing her of this assignment of the policy. And he stated in his letter to her that he had attached to the policy a document whereby at his decease the company would pay over to her the sum of $3,000, and which he stated might do her some good and help her along in her struggle for bread.

A dispute arose between the plaintiff and the defendant as the administratrix of the assured as to which had the better right to the moneys paid by the company in discharge of its liability under the policy. And it was held at the trial under this state of facts that the title to the money had become vested in the plaintiff, and that she was entitled to recover it in this action, and upon the accuracy of this decision the disposition of the case is now mainly made to depend.

What the assured intended to do was to give the insurance and the money resulting from it to his daughter, he, in the meantime, designing to pay the premium and keep the insurance in life. And to create such a gift, it is beyond dispute the law of the case, that a delivery of the assignment must have been made to the donee. Delivery is essential to a gift of personal property and it must be such " as to vest the donee with the control and dominion over the property and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee." (*Jackson* v. *Twenty-third Street Railway Co.*, 88 N. Y., 520, 526.) In that case there was no such delivery to the testator, and because of its absence the action was not permitted to be sustained. The same principle was followed in *Wallace* v. *Berdell* (97 N. Y., 13). But it is not necessary that the delivery of the thing intended to be given should be made directly to the person intended to receive or be invested with the gift, but it may be made to another person for him, when that is done so as to divest the possession and title of the donor. (*Young* v. *Young*, 80 N. Y., 422, 430.) And what took place concerning this insurance seems to have been attended with that effect. (*Hutchings* v. *Miner*, 46 N. Y., 456.)

The assignment, so far as it was for the benefit of the plaintiff, was absolute, and subject only to the contingency of her surviving her father, the assured, who was the assignor. And it was delivered to the company intending to secure such action on its part as would

recognize the right and title of the plaintiff to the money, and place the company under the obligation to pay it over to her upon the decease of the assured, unless the assignment should be afterwards canceled and returned. It appears to have been accepted by the company with that understanding and with the intent to hold the money afterwards for the benefit of the plaintiff. And for the expression of that intent, after it had filed away a copy of the assignment, it made the indorsement which it did upon the original, before it was returned. The assignor acquiesced in the action of the company, which had been taken in this manner at his instance, and informed the plaintiff of the transaction, giving her by the letter written to her by himself, the right to look to and hold the company as her debtor, for the payment of this money. And she accordingly accepted the gift, and proceeded to enforce it after the decease of her father, by supplying the usual proofs of death, and demanding of the company the payment of the money. More was done in this instance to confer upon her the title to the insurance money than was sanctioned as being attended with the like effect in the case of *Martin* v. *Funk* (75 N. Y., 134). There the donor made a deposit in a savings bank, declaring in the account that it was in trust for another person. And that was held to be equivalent to a gift of the money by the depositor to the beneficiary. There was not only the intention to make a gift of these moneys to the plaintiff, but the company which was to be the debtor after the decease of the assured, was apprised of it and placed in such a position as to be obligated to pay it over to her, and she was informed of what had been done in this manner to secure to her the payment and benefit of the fund. The assignment under this state of facts may legally be held to have been delivered to the insurance company for the benefit of the plaintiff, and the effect of the delivery was not defeated by afterwards returning the assignment to the assignor after the company had complied with what appeared to be essential to mature its obligation. As to this part of the case the ruling at the trial appears to have the support of the law.

To defeat the right of the plaintiff to maintain the action, proof was given under the answer showing that a general assignment was made on the 11th of September, 1884, by a firm, of which the assured was a member. This assignment was not only made of the

partnership property, for the benefit of the firm creditors, but, in addition to that, it was declared that the assignors sold, assigned, delivered and conveyed to the assignee, all and singular their real estate and personal property of every kind and nature, held and owned by them, respectively, as their separate and individual property. And under this assignment it was urged at the trial that the assured had become divested of his interest in the policy, prior to his assignment in 1887, to the plaintiff, and that she acquired no title whatever under that assignment. But the defendant was in no way connected with this assignment, or with the right or title of the assignee under it. And it did not appear that the policy of life insurance was ever passed over or delivered to the assignee, or in any manner claimed by him, but the probabilities of the case warrant the conclusion that it remained in the possession of the assured himself, and he paid the premiums upon it, which, by its own language, was indispensably necessary to keep the policy alive. In this manner he had from time to time renewed it for his own benefit, subsequent to the time of the execution and delivery of the assignment. If that had not been done by the payment of the annually accruing premium, the policy would have ceased to exist and become null and void. In this manner the assured continued the insurance himself, after the time when the general assignment was executed and delivered, and he had secured to himself its benefit as an insurance upon his life by what had taken place after the general assignment was made, and which, if it had been omitted, would have voided the policy. And that gave him the right, certainly, against the personal representative of his own estate, to assign the insurance to the plaintiff in the action, as he is already shown to have done. And the court, on this account, was right in overruling the objection that the plaintiff could not maintain the action because of this preceding general assignment. In this respect, the case differs very materially from those which have been referred to in support of this objection, and required the plaintiff's right to be maintained as superior to that of the general assignee.

It was shown at the trial that a large amount of the debts of the firm of which the assured was a member remained unpaid. And the right of the plaintiff to the insurance money was further resisted

by the defendant under the authority conferred upon her, as administratrix, by chapter 314 of the Laws of 1858, to impeach and set aside the assignment of the insurance for the benefit of the creditors of the testator. And because he was insolvent and gave the insurance to the plaintiff, it was claimed at the trial that his assignment was void as a matter of law, as made with the intent to hinder, delay and defraud creditors. But there was no proof that he was actuated with that intent, other than the presumption arising out of the facts of his insolvency at the time of the assignment. From that fact, however, and the donation of the money to the plaintiff, it might have been inferred, if the case had been submitted to the jury, that the assignment to the plaintiff was attended with this intent. But the court was not requested to submit this point to the jury. The counsel for each of the parties, on the contrary, regarded the case as dependent solely upon legal propositions. And, on behalf of the defendant, the court was asked to direct a verdict in her favor upon this and the other grounds which have been considered. That the court was not justified in doing, for the law has declared that the question of a fraudulent intent in cases of this description shall be one of fact, and not of law, and, therefore, to be submitted to the jury. (3 R. S. [6th ed.], 145, § 4.) It would have been an infraction of this direction of the law for the court to have required a verdict from the jury on this ground without submitting to them for their consideration the evidence concerning the facts. This exception, as well as the others, was not well taken. Neither was the exception to the direction of a verdict by the court after the defendant had presented all the points in the case to the justice presiding at the trial, to be considered and decided by him.

The motion for a new trial should be denied, and the plaintiff should have judgment on the verdict.

VAN BRUNT, P. J., and BRADY, J., concurred.

Motion for new trial denied.