FANNIE F. WEAVER

v.

MARY W. WEAVER.

*Opinion filed October 16, 1899—Rehearing denied December 7, 1899.*

1. INSURANCE—*when giving of duplicate assignment to agent is not a delivery.* The delivery of a duplicate assignment of a life insurance policy to an agent of the company does not amount to a delivery to a third person for the benefit of the assignee, when the copy was furnished the agent in compliance with a condition in the policy.

2. SAME—*what not a valid gift of insurance policy.* A son who, after executing an assignment of a life insurance policy to his mother as a gift, sends word to her of the fact and that he will keep the policy and assignment for her, does not thereby make a valid delivery of the assignment or deprive himself of the right to make a different disposition of the policy thereafter.

3. TRUSTS—*a trust cannot be deduced from a mere imperfect gift.* A trust relation with reference to an assignment of a life insurance policy cannot be said to exist between the assured and the assignee where the gift of the assignment was imperfect.

*Weaver v. Weaver,* 80 Ill. App. 370, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

ROGERS & MAHONEY, and FREDERICK A. WILLOUGHBY, for appellant:

It is essential to the validity of a gift that the donor must be competent to contract; there must be freedom of will; the gift must be complete, with nothing left undone; the property must be delivered by the donor and accepted by the donee, and the gift must go into immediate and absolute effect. Am. & Eng. Ency. of Law, 1313.

Equity will not interfere to perfect a defective or imperfect gift, nor convert such a gift into a declaration of trust merely on account of the imperfection. Am. & Eng. Ency. of Law, 1314.

In order to complete the assignment or gift, delivery, or that which is equivalent thereto, must be made. *Lemon* v. *Insurance Co.* 38 Conn. 294; *Palmer* v. *Merrill*, 6 Cush. 282; *Otis* v. *Beckwith*, 49 Ill. 121; *Williams* v. *Chamberlain*, 165 id. 210; *Bristow* v. *Hall*, 16 Tex. 566; *Riseley* v. *Bank*, 83 N. Y. 318; *Williams* v. *Guile*, 46 Hun, 645; *Weber* v. *Christen*, 121 Ill. 91.

In this State an insurance policy is but a chose in action, and governed by the principles applicable to choses in action in general. *Conyne* v. *Jones*, 51 Ill. App. 17; *Insurance Co.* v. *Ludwig*, 103 Ill. 305.

There was no trust in this case, either express or implied. *Badgley* v. *Votrain*, 68 Ill. 25; *Kingsbury* v. *Burnside*, 58 id. 310; *Stevenson* v. *Crapnell*, 114 id. 19; *Lantry* v. *Lantry*, 51 id. 458; 2 Pomeroy's Eq. Jur. sec. 1044; *Biggins* v. *Biggins*, 133 Ill. 218; *Williams* v. *Chamberlain*, 165 id. 210; *Clark* v. *Durand*, 12 Wis. 233; *Perry* v. *McHenry*, 13 Ill. 236.

HOLDEN & BUZZELL, (WILLIAM H. HOLDEN, of counsel,) for appellee:

Edward L. Weaver made and delivered a formal assignment of the policy. He left nothing undone to complete the gift to his mother. He notified her of the assignment and she accepted the same. Upon his death she could sue and recover, therefore the gift was effectual as a gift *inter vivos.* 8 Am. & Eng. Ency. of Law, 1313, 1314.

The delivery to the insurance company of the assignment to the appellee was a valid and effectual delivery thereof for the use and benefit of appellee. *Fortescue* v. *Barnett*, 3 M. & K. 41; *Sanborn* v. *Goodhue*, 28 N. H. 56; *Kerrigan* v. *Rautigan*, 43 Conn. 23; *Walker* v. *Walker*, 42 Ill. 311; *Bryan* v. *Wash*, 2 Gilm. 557; *Otis* v. *Beckwith*, 49 Ill. 121; *McEwen* v. *Troost*, 1 Sneed, 191; 33 Tenn. 191; *DeCaument* v. *Bogort*, 36 Hun, 382; *Hurlbut* v. *Hurlbut*, 49 id. 189; *Gunnell* v. *Cockerill*, 79 Ill. 79; *Baker* v. *Baker*, 159 id. 394; *Wilson* v. *Wilson*, 158 id. 574; *Shea* v. *Murphy*, 164 id. 614; *Gannon* v. *McGuire*, 47 N. Y. Sup. 870; *Cline* v. *Jones*, 111 Ill. 566; *Tar-*

*box* v. *Grant*, 39 Atl. Rep. 378; *Walter* v. *Way*, 170 Ill. 96; *Martin* v. *Martin*, id. 639.

The gift, being evidenced by deed duly delivered to a third person, is complete. *Fulton* v. *Fulton*, 48 Barb. 590; *Crabtree* v. *Crabtree*, 159 Ill. 348; *Miller* v. *Meers*, 155 id. 294; *Masterson* v. *Cheek*, 23 id. 73; *Knapstein* v. *Tinnette*, 156 id. 324; *Folly* v. *Fautuyl*, 4 Halst. 158; *McElroy* v. *Hiner*, 133 Ill. 156; *Jaggers* v. *Estes*, 3 Strobh. Eq. 379; *Mallett* v. *Page*, 8 Ind. 364.

In a gift by parol, only, is the delivery of the thing given essential. *Ewing* v. *Ewing*, 2 Leigh, 343; *Carpenter* v. *Soule*, 43 Sickels, 257; *Matson* v. *Abbey*, 70 Hun, 477; *McCutchen* v. *McCutchen*, 9 Port. 650; *Walker* v. *Crews*, 73 Ala. 415; *Crawford* v. *Bertholf*, 1 N. J. Eq. 458; *Bunn* v. *Winthorp*, 1 Johns. Ch. 329; *Reed* v. *Douthit*, 62 Ill. 348; *Fulton* v. *Fulton*, 48 Barb. 590.

In the case of a gift which is valid upon delivery of the assignment, the gift is complete upon such delivery to the debtor, and nothing further is required to enable the assignee to sue for and recover the demand thus assigned. *Williams* v. *Chamberlain*, 165 Ill. 220; *Shults* v. *Shults*, 159 id. 660; *Cline* v. *Jones*, 111 id. 566; *Irons* v. *Smallpiece*, 2 B. & A. 551; *Bryan* v. *Wash*, 2 Gilm. 557.

The law presumes more in favor of the delivery of deeds made in the course of voluntary settlements than it does in ordinary cases of bargain and sale. *Winterbottom* v. *Pattison*, 152 Ill. 334; *Reed* v. *Douthit*, 62 id. 348.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The parties to this litigation were interpleaders in the circuit court of Cook county upon the petition of the Ætna Life Insurance Company, each claiming the benefit of a policy of insurance upon the life of Edward L. Weaver, procured December 20, 1882. He died May 9, 1896, leaving appellant, his widow, and appellee, his mother, surviving him. The policy provided that "no assignment of this policy shall be valid unless made in

writing and attached hereto and a copy thereof furnished said company; and any claim against this company arising under this policy, made by any assignee, shall be subject to proof of interest." On October 8, 1892, about one year after his marriage to appellant, insured went to the office of the company in Chicago and there filled out in duplicate an assignment to his mother, as follows:

"For value received I hereby transfer, assign and turn over unto Mary W. Weaver, mother, all my right, title and interest in policy of life insurance No. 35,856, issued by the Ætna Life Insurance Company of Hartford, Conn., and all benefit and advantage to be derived therefrom.

"Witness my hand and seal at Chicago, State of Illinois, this eighth day of October, 1892.

Edward L. Weaver. [Seal.]"

This he acknowledged before a notary public on that day, and left one copy with the agent of the company, and took the other, with the policy, to his home. A short time previous to his death (May 9, 1896,) he made another assignment, to appellant, one copy of which was attached to the policy and delivered by him to her; the other she caused to be delivered to the company some days after his death.

Upon a hearing in the circuit court a finding and decree were rendered in favor of the wife, which, on appeal to the Appellate Court for the First District, was reversed for error in the exclusion of evidence, and the cause was remanded for further proceedings. On a second hearing the chancellor again found for the wife, and entered a decree in her favor, but that decree has been reversed by the Appellate Court and the cause remanded, with directions to enter a decree in favor of the mother. To reverse that judgment the wife prosecutes this appeal.

Both assignments are admitted by all parties to have been intended by the assignor as mere gifts. The contention on behalf of the mother, in the circuit and Appellate Courts and here, is, that the assignment to her was a perfected gift and the power of the insured to thereafter

make an assignment of it exhausted; or, as it is some-
times expressed, after that assignment he was no longer
*in loco pœnitentiœ.*   And this position, though overruled
by the circuit court, has been sustained by the Appellate
Court.   The correctness of the contention depends upon
whether or not there was such a delivery of the assign-
ment as to put the control of it and the policy out of the
power of the assignor during the remainder of his life.
It is conceded, as clearly it must be, that unless there
was such delivery the gift to the mother was not so per-
fected *inter vivos* as to give it validity as against the sec-
ond assignment, and, on the other hand, it is not denied
that if the first assignment was so far completed as to
become a valid and binding gift upon the part of the
donor, then the second subsequent gift to the wife is in-
valid for want of power to make it.

Turning, then, to the vital question in the case, was
there a delivery of the assignment of October 8, 1892, to
the mother?   No controversy is made upon the proposi-
tion that an actual, manual delivery was not necessary,
but it is admitted by counsel for appellant that a good
delivery may be made by acts without words, by words
without acts, or by both; that a delivery may be legally
made to a third person for the benefit of a grantee, or, as
in this case, the assignee.   The usual mode of delivery is
the mutual transfer from the grantor to the grantee.   But
it is too well understood to call for the citation of author-
ities, that the declarations and conduct of the grantor in
relation to the instrument may be such as to become
equivalent to such actual delivery, and in every such
case the crucial test is the intent with which the acts or
declarations were made, and that intent is to be ascer-
tained from the conduct of the parties, particularly the
grantor, and all the surrounding circumstances of the
transaction.   (*Weber* v. *Christen,* 121 Ill. 91.)   "Delivery is
by words, acts, or both combined, by which a grantor ex-
presses a present intention to divest himself of title to

property described in a proper deed. No particular form of delivery is required. A deed may be manually given by the grantor to the grantee, yet manual delivery is unnecessary. The real test of delivery is this: Did the grantor, by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered." 9 Am. & Eng. Ency. of Law, (2d ed.) pp. 153, 154,—citing *Weber* v. *Christen, supra,* and other Illinois decisions to like effect.

In *Provart* v. *Harris,* 150 Ill. 40, (on p. 47 of the opinion,) after citing authorities as to what will constitute a good delivery, we said: "While it may not be essential in all cases that the deed should be delivered into the actual possession of the grantee, (*Gunnell* v. *Cockerill,* 79 Ill. 79,) it is indispensable, whatever means may be adopted to accomplish its delivery, that the deed pass beyond the dominion and control of the grantor, for otherwise it can not be correctly said to come within the power and control of the grantee. Their interests are diametrically opposed. Both cannot, consistently with its objects, have control of the deed at the same time, and until the grantor parts with all control over it that of the grantee does not attach. (Cases *supra.*) It is absolutely essential that the acts done or words spoken, or both, shall clearly manifest an intention on his part that the deed shall presently become operative to convey the estate therein described to the grantee, and that he has parted with all power of control and dominion over it, (*Bryan* v. *Wash,* 2 Gilm. 557,) for, as we have seen, if the grantor retains dominion and control over it, the deed is ineffectual for any purpose as a conveyance. In *Cook* v. *Brown,* 34 N. H. 460, the court, in passing upon this point, there said: 'To make the delivery good and effectual the power of dominion over the deed must be parted with. Until then the instrument passes nothing. It is merely ambulatory and gives no title. * * * So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it and can acquire

none, and if the grantor dies without parting with his control over the deed it has not been delivered during his life, and after his decease no one can have the power to deliver it.' In *Prutsman* v. *Baker*, 30 Wis. 644, it was said: 'To constitute delivery, good for any purpose, the grantor must divest himself of all power and dominion over the deed. * * * An essential characteristic and indispensable feature of every delivery, whether absolute or conditional, is, that.there must be a parting with the possession and of the power and control over the deed by the grantor, for the benefit of the grantee, at the time of delivery.' While the doctrine announced in these cases has not been universally adopted, (1 Devlin on Deeds, sec. 283,) it is supported by the great current of authority,"— citing authorities. In *Walter* v. *Way*, 170 Ill. 96, (on p. 99 of the opinion,) we again said: "It has also been said that a delivery may be by acts or words, or by both, or by one without the other. But it is well settled that several things are necessary to constitute a valid or effective delivery of a deed. One of the essential requisites of a sufficient delivery is, that the deed pass beyond the dominion and control of the grantor,"—citing with approval *Provart* v. *Harris, supra.* To the same effect is *Hawes* v. *Hawes*, 177 Ill. 409.

Here there is no claim that there was an actual delivery of the deed of assignment to Mary W. Weaver, the appellee, but it is insisted that the leaving of one of the duplicate copies with the agent of the insurance company amounted to a delivery to a third person for her benefit. This position cannot be sustained. We think it clear, from all the facts in the case, that the only purpose of the insured in leaving that copy with the company was to comply with the condition in the policy requiring, in case of an assignment, a copy thereof to be furnished to the company.

The case of *Hurlbut* v. *Hurlbut*, 49 Hun, 189, relied upon by counsel for appellee as an authority sustaining their

contention on this point, is distinguishable from this case
in that particular,—at least there is nothing in the·case
as reported to show that there was a condition in the·
policy that the company should be furnished with a copy
of any assignment to make it valid.    It was perfectly
consistent with all the facts in that case to hold that
the delivery to the agency of the company was with
the intent to presently divest the title of the father and
transfer it to the daughter, whereas here it is altogether
consistent with the facts that the duplicate was placed
in the hands of the agent solely for the purpose of taking
one step, made necessary by the policy, to finally con-
summate the transfer. . The declarations of the assured,
proved by appellee herself, to the effect that he would
retain the policy and assignment for her, are inconsistent
with the claim that by the delivery of the copy he in-
tended that a third party should hold it for her benefit.
The fact that the copy was executed, acknowledged and
left with the company is, of course, a circumstance tend-
ing to show, with all the other facts of the case, that
there was a purpose, at the time, to make a complete
gift to the assignee, but it was not, of itself, a valid de-
livery.    And *Williams* v. *Chamberlain,* 165 Ill. 210, goes no
further than this.·

But it is insisted that the acts and declarations of
the insured were equivalent to a delivery to the assignee
herself.    It appears from the testimony of Mr. Snow, a
brother-in-law of the deceased, that on the day the blanks
were filled up and executed at the office of the company,
and after they were completed and a copy left with the
agent, deceased directed him to inform his mother that
he "had assigned his policy of life insurance in the Ætna
Life Insurance Company, of $2000, to her, *and he would
keep the policy and assignment for her.*"    This witness also
testified that that evening, at his house, the mother being
present, (she then living with him,) he delivered that mes-
sage, to which she replied, in substance, that it was very

kind in her son. · The wife of Snow, sister of deceased, also testified to the delivery of the message and the reply of the mother. Subsequently all the parties met in California, where the insured resided for a time for his health, and Snow, his wife and appellee all testify to conversations there, some of which were as late as in the winter of 1895, in which the deceased stated that he had assigned the policy to his mother, and she testifies that he at one time told her that he would keep it for her. This testimony, considered most favorably to the appellee, merely amounts to saying that he made the assignment, retained possession of it, and sent word to his mother that he had made it and that he would "keep it for her." There is no evidence in this record to the effect that the assignment was ever attached to the policy, and the proof shows that it was never seen after the assured took it from the office of the company. At the time of the assignment to the wife the policy was found in a tin box in the trunk of the assured, and no assignment was attached to or found with it. Certainly, under the testimony of Snow, his wife and appellee, it cannot be said the assured ever parted with the dominion and control over the instrument, unless it must be held that he did so by the declaration or promise that he would keep it for the assignee.

It has been held that there could be no valid delivery of a deed so long as it remained in the possession and control of the maker. While the rule is not uniform, no case has been found which holds, nor can we conceive that it could be held, that a deed retained by the grantor for the grantee would ever be equivalent to a delivery, unless it was clearly shown that he retained it under such circumstances as would estop him from making any other disposition of it subsequently. That Edward L. retained the physical control of this assignment cannot be questioned. That he had it in his power to destroy it (and we think it fairly inferable that he did do so) is clear. The promise that he would keep it for his mother

was without consideration, the transfer being a mere gift, and no one will claim that she could, at any time, by any means, have compelled the fulfillment of that promise. Had he the next day, or at any time subsequent to the execution of the instrument, seen proper to inform his mother that he had changed his mind and determined not to keep it for her, will it be seriously contended that she could have prevented the carrying out of that determination? If so, upon what principle and by what means? It may be said that, morally, it was wrong that he should deceive her by his conduct and declarations, but he was guilty of no legal wrong for which the law affords a remedy. The charitable view, however, and one not inconsistent with the facts, to our minds, is, that while he at different times had it in his mind to give the policy to his mother, he never understood that he had absolutely done so, and that, putting his own construction on his acts and declarations, he never intended to foreclose himself of the right to leave it to his estate or give it to his wife if circumstances, in his judgment, subsequently justified it. In the very case of *Otis* v. *Beckwith*, 49 Ill. 121, so much relied upon by counsel for appellee, the assignment was made, the company and assignee (a trustee) notified thereof, and the latter returned to the assignor his written acceptance thereof. The assignor retained the assignment until his death, never in any way indicating a purpose to revoke it, and it was held, after his death, that it was a valid assignment, enforceable in equity, but Chief Justice BREESE, in rendering the opinion, said (p. 141): "We place the most stress upon the first point discussed, and that is the intention of the donor. * * * At no time did he manifest any desire to retract, and though he occupied *locus pœnitentiœ*, he did not repent of his act, but left the world with the conception that those so dear to him had been provided for." If in that case the assignor was, during his lifetime, *in loco pœnitentiœ*, how can it be said here that Edward

L. Weaver was powerless, from the moment he sent the message to his mother, to repent of his act and do as it is conceded he did, with all the formalities and requirements of law and the conditions in his policy, by giving it, as the last act of his life, to his wife?

What we have here said sufficiently disposes of the point that a trust relation existed between the assured and his mother as to the assignment. We have shown that there was no valid delivery, and therefore the gift was imperfect. It was held in *Badgley* v. *Votrain*, 68 Ill. 25 (on p. 30): "If the trust is perfectly created, so that the donor or settlor has nothing more to do and the person seeking to enforce it has need of no further conveyance, * * * it will be carried into effect, although it was without consideration and the possession of the property was not changed; but if, on the other hand, the transaction is incomplete and its final completion is asked in equity, the court will not interpose to perfect the settlor's liability without first inquiring into the origin of the claim and the nature of the consideration,"— citing authorities. There was much stronger reason for holding that an enforceable trust existed between Williams and his sisters in the case of *Williams* v. *Chamberlain*, *supra*, but we held that "from a mere imperfect gift a trust cannot be deduced." (See *McCartney* v. *Ridgway*, 160 Ill. 129, and cases there cited.) As was said in that case on page 153: "A court of equity will not aid a mere volunteer to carry into effect an imperfect gift or an executory trust."

Our conclusion is that the decree of the circuit court was right, and it will accordingly be affirmed and the judgment of the Appellate Court reversed.

*Judgment reversed.*