WELLS and others, Appellants, vs. WELLS and others, Re-spondents.

*April 16—May 21, 1907.*

*Deeds: Deposit with third person, with direction for delivery after grantor's death.*

A conveyance of land from father to son, with a memorandum at-tached directing that it be delivered to the son, five days after the father's death, by his executor or administrator, was in-closed in an envelope on which was written "In escrow to H. L. with directions to deliver as within stated," and was deposited by the father with H. L., whom the father then intended to name as his executor. The father died intestate. *Held,* that upon the deposit of the deed with H. L. it became the present deed of the grantor, and that upon its delivery, as directed, to the son the title to the land vested in him absolutely.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Peter Wells was born November 2, 1814. He died intestate September 26, 1904, leaving him surviving five children, *Thomas B., Joshua, Charles, Adeline M'Cammant,* and *Catherine Lichtenwalner,* all of whom are defendants in this action, and also four grandchildren, who are children of his deceased son Matthew Wells, who died at his residence at Sumner, Iowa, January 12, 1893, and all four of whom are the plaintiffs in this action. The said Peter Wells also seems to have left some $40,000 of personal property to be administered in this state, and also a large amount of real estate, said to be approximately worth $145,000. It appears that some two years and eight months prior to his death and soon after he was eighty-seven years of age, Peter Wells conceived the idea of dividing his real estate, or the most of it, among his children and grandchildren under the circumstances hereinafter stated. Pursuant to such purpose and on January 27, 1902, he executed seven deeds, one to each of his five children and one to each of two of his grandchildren, of the lands therein respectively described.

On April 29, 1905, the four grandchildren commenced this action against the son *Thomas B. Wells* and wife and the other children of the deceased to cancel, vacate, and set aside the deed so executed by Peter Wells to the said *Thomas B. Wells* January 27, 1902, of the lands therein described, as being a cloud upon the undivided one-sixth interest of the real estate left by the deceased, which the plaintiffs claim to own as heirs at law of said intestate and as tenants in common with their said five uncles and aunts. *Thomas B. Wells* answered the complaint in the action, claiming title under said deed to the lands therein described.

At the close of the trial the court found as matters of fact, in addition to the facts stated, (2) that the deed from Peter Wells to *Thomas B. Wells* was a warranty deed, reciting a

consideration of one dollar and the love and affection borne
by the said Peter Wells to his said son *Thomas B. Wells,* and
describing the premises therein conveyed; (3) that upon the
same date, January 27, 1902, the said Peter Wells also
made, executed, and acknowledged in the same manner deeds
of real estate upon the same express consideration to each of
his other surviving children and also to two of said grand-
children; (4) that upon the same date, January 27, 1902,
the said Peter Wells made and signed a memorandum in
writing in words as follows: "I hereby direct that the deed
hereto annexed shall five days after my death be delivered by
my executor or administrator to my son *Thomas Wells,* or his
heirs, and that he have possession of the property contained
therein. PETER WELLS,"—and did annex said memorandum
to the said deed to the defendant *Thomas B. Wells* hereinbe-
fore mentioned; that upon the same day he made and exe-
cuted similar memoranda, which he annexed to each of the
deeds to his other surviving children named therein; that
each of said deeds with the memorandum attached to each
was placed by the said Peter Wells in a separate envelope;
that all of said envelopes containing such deeds with the mem-
oranda attached were placed in a large box envelope, upon
which was written, at the direction of said Peter Wells, "In
escrow to Henry Ludlow, with directions to deliver as within
stated;" (5) that January 27, 1902, said Peter Wells had in
mind the drawing of a will to dispose of other parts of his
property not disposed of by deed; that he had determined to
name said Henry Ludlow as executor of said will, and that
in using the words "my executor or administrator," in said
memoranda, said Peter Wells intended to describe and did
mean said Henry Ludlow, the person to whom he intended to
deliver said deeds for the grantee and being the same person
he intended to name as executor in his will; that said Peter
Wells did not make a will, but intended such directions to be
a direction to said Henry Ludlow to deliver said deeds to the

respective grantees named in said deeds; (6) that January 27, 1902, the said Peter Wells at Monroe, Wisconsin, did deposit said deed to the defendant *Thomas B. Wells,* together with the deeds to his other surviving children, each with a memorandum attached, as hereinbefore stated, and contained in said envelope, as hereinbefore stated, with Henry Ludlow to receive and hold for the defendant *Thomas B. Wells* and the other respective grantees named in each of said deeds, with intent thereby to give each of such papers effect as a deed and to place the same *beyond the custody and control* of the grantor, Peter Wells; that said Peter Wells delivered said deed to *Thomas B. Wells,* together with the other deeds inclosed in said envelopes, with instructions to the said Henry Ludlow to take them and hold them in his possession until after his, Peter Wells's, death, and then to deliver them to their respective grantees named in the deeds, and said Peter Wells did relinquish all custody and control over said deed to *Thomas B. Wells* and the other deeds contained in said envelope as aforesaid; (7) that said Henry Ludlow did take said deeds and place the same in his safety deposit box in the First National Bank of Monroe, where he kept the same for the respective grantees until the 1st day of October, 1904, when the said Henry Ludlow delivered said deed made to said *Thomas B. Wells* as grantee to the said *Thomas B. Wells,* and each of the other deeds contained in said envelope aforesaid to the respective grantees named therein; that thereupon the said *Thomas B. Wells* caused his said deed to be recorded in the office of the register of deeds for Green county, October 1, 1904, in volume 87 of Deeds, page 322; (8) that some time prior to January 27, 1902, the said Peter Wells placed the said *Thomas B. Wells* in possession of the property described in said deed, and that the said *Thomas B. Wells* had possession thereof for such time until the death of said Peter Wells, and still has possession thereof; (9) that the said *Thomas B. Wells* did not exercise

any undue influence or any persuasion whatever over said Peter Wells to induce him to make and execute the deed hereinbefore described; that said deed was made by Peter Wells of his own free will, and was not procured by undue influence or fraud exercised over or practiced upon him by the defendant *Thomas B. Wells,* or any other person acting in his behalf.

As conclusions of law the court found, in effect, that the warranty deed of Peter Wells to *Thomas B. Wells* became the present deed of the said Peter Wells to said *Thomas B. Wells* upon the delivery thereof by Peter Wells to Henry Ludlow, and that, upon the delivery thereof by Henry Ludlow to *Thomas B. Wells,* the title to all of the real estate therein described vested in said *Thomas B. Wells* absolutely, and that he is now the owner thereof in fee, and that *Thomas B. Wells* is entitled to judgment dismissing the complaint and for costs and disbursements of this action against the plaintiffs.

From the judgment entered in accordance with such findings the plaintiffs appeal.

*J. L. Sherron* and *Burr W. Jones,* for the appellants, to the point that the deed was testamentary in character and hence ineffective, cited *Templeton v. Butler,* 117 Wis. 455, and cases cited; *McCourt v. Peppard,* 126 Wis. 326; *Hayden v. Collins* (Cal.) 81 Pac. 1120, 1121; *Spacy v. Ritter,* 214 Ill. 266, 73 N. E. 447; *Cook v. Brown,* 34 N. H. 460; *Walter v. Way,* 170 Ill. 96, 48 N. E. 421; *Osborne v. Eslinger,* 155 Ind. 351, 58 N. E. 439; *Culy v. Upham,* 135 Mich. 131, 97 N. W. 405; *Taft v. Taft,* 59 Mich. 185, 26 N. W. 426; *Harman v. Harman,* 70 Fed. 894; *Leonard v. Leonard,* 145 Mich. 563, 108 N. W. 985. Where a deed is delivered in escrow to be delivered *after* the death of the grantor it is null and void. *Taft v. Taft,* 59 Mich. 185, 26 N. W. 426; *Hathaway v. Payne,* 34 N. Y. 92; 3 Washb. Real Prop. (5th ed.) 319, 320.

For the respondents there was a brief by *Colin W. Wright* and *Fethers, Jeffris & Mouat,* and oral argument by *Mr. Wright* and *Mr. M. G. Jeffris.* They argued, among other things, that delivery of the deed in question by Peter Wells to Henry Ludlow constituted a present deed and title vested absolutely in the grantees. *Prutsman v. Baker,* 30 Wis. 644, 650; *Albright v. Albright,* 70 Wis. 528; *Williams v. Daubner,* 103 Wis. 521, 523; *Kittoe v. Willey,* 121 Wis. 548; *Foster v. Mansfield,* 3 Met. 412; *Albrecht v. Albrecht,* 121 Iowa, 521, 96 N. W. 1087; *Wheelwright v. Wheelwright,* 2 Mass. 447; *Hathaway v. Payne,* 34 N. Y. 92; *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490; 1 Devlin, Deeds (2d ed.) § 280. The depositary in such a case becomes the trustee of the grantee. *Jenkinson v. Brooks,* 119 Mich. 108, 77 N. W. 640; *Ball v. Foreman,* 37 Ohio St. 132. The grantor converts his estate into a life tenancy and becomes the tenant of the grantee. *Albrecht v. Albrecht,* 121 Iowa, 521, 96 N. W. 1087; *White v. Watts,* 118 Iowa, 549, 92 N. W. 660. It is immaterial whether the deed actually comes into the hands of the grantee, for the deed takes effect from the first delivery; and this is so even though the grantee never gets possession of the deed. *Prutsman v. Baker,* 30 Wis. 644, 650; *Bryan v. Wash,* 2 Gilm. (7 Ill.) 557; *Belden v. Carter,* 4 Day, 66; *Wheelwright v. Wheelwright,* 2 Mass. 447. The decisions of other courts under facts somewhat similar show that there was a legal and valid delivery. *Foreman v. Archer,* 130 Iowa, 49, 106 N. W. 372; *Bury v. Young,* 98 Cal. 446, 33 Pac. 338; *Sneathen v. Sneathen,* 104 Mo. 201, 16 S. W. 497; *Crabtree v. Crabtree,* 159 Ill. 342, 42 N. E. 787; *Lippold v. Lippold,* 112 Iowa, 134, 83 N. W. 809; *Munro v. Bowles,* 187 Ill. 346, 58 N. E. 331, 54 L. R. A. 865; *Trask v. Trask,* 90 Iowa, 318, 57 N. W. 841; *St. Clair v. Marquell,* 161 Ind. 56, 67 N. E. 693; *White v. Watts,* 118 Iowa, 549, 92 N. W. 660; *Miller v. Meers,* 155 Ill. 284, 40 N. E. 577; *Stout v. Rayl,* 146 Ind. 379, 45 N. E. 515; *Owen v. Williams,* 114 Ind. 179, 15 N. E. 678; *Squires v. Summers,* 85

Ind. 252; *Arnegaard v. Arnegaard,* 7 N. Dak. 475, 75 N. W. 797; *Gilley v. Atkins,* 78 Conn. 380, 62 Atl. 337, 4 L. R. A. N. s. 816.

CASSODAY, C. J. There can be no doubt that the several deeds from Peter Wells to his children and grandchildren were executed at the time and in the manner and contained the recitals mentioned in the foregoing statement. The court found, in effect, that Peter Wells made and executed the deed to *Thomas B. Wells* of his own free will, and that the same was not procured by undue influence or fraud exercised over or practiced upon him by *Thomas B. Wells* or any other person acting in his behalf, and that *Thomas B. Wells* did not exercise any undue influence or any persuasion whatever over said Peter Wells to induce him to make or execute said deed. Such finding is sustained by the evidence. The mental competency of Peter Wells to transact the business in question cannot be seriously doubted. True, he was upwards of eighty-seven years of age and his eyesight was badly impaired at the time of executing the deed, but the deeds were all voluntarily made according to his directions and apparently without the knowledge of any of the several grantees as to the contents of any of such deeds.

As indicated in the foregoing statement, the deed to *Thomas B. Wells* was annexed to a written memorandum or direction signed by Peter Wells, to the effect that the same should, five days after his death, be delivered by the executor (Henry Ludlow) to his son *Thomas B. Wells,* or his heirs at law, and that he have possession of the property described therein, and then such deed, with such memorandum attached, was placed by the said Peter Wells in a separate envelope. The same was true as to each of the deeds to the other surviving children named therein. Then each and all of said envelopes containing such deeds, with such memoranda attached, were placed in a large box envelope, upon which was written, at the direction of said Peter Wells: "In

escrow to Henry Ludlow, with directions to deliver as within stated." Upon the facts, more fully set forth in the foregoing statement, counsel for the plaintiffs contend that the deceased never gave up the legal control of the deed running to *Thomas B. Wells.* Of course, where the grantor retains the custody and control of a deed, there is no effectual delivery to pass title. *Prutsman v. Baker,* 30 Wis. 644, 647, 650, 651; *Campbell v. Thomas,* 42 Wis. 437; *Williams v. Daubner,* 103 Wis. 521, 79 N. W. 748; *Ward v. Russell,* 121 Wis. 77, 98 N. W. 939. In the first of these cases, Dixon, C. J., while adhering to the general rule here contended for by counsel, said:

"In some cases the deed is held to operate presently, though placed in the hands of a stranger with a direction to deliver it to the grantee at some future day or upon some certain event. In such cases, if there be no condition connected with the delivery to the grantee, the happening of which must by the terms of the authority in the receiver precede such delivery, the title passes at once to the grantee."

While such statement was not essential to the decision made in that case for the reason that the deed was there found to be within the control and subject to the authority of the grantor during his lifetime, still the proposition mentioned is abundantly supported by the adjudications from Massachusetts and New York there cited. *Wheelwright v. Wheelwright,* 2 Mass. 447, 452; *Foster v. Mansfield,* 3 Met. 412; *Tooley v. Dibble,* 2 Hill, 641; *Hathaway v. Payne,* 34 N. Y. 92, 106. In the first of these cases Parsons, C. J., said:

"If a grantor deliver any writing as his deed to a third person to be delivered over by him to the grantee on some future event, it is the grantor's deed *presently,* and the third person is a *trustee* of it for the grantee."

Two of these cases are quite similar to the case at bar. In one of them two deeds were executed and acknowledged and then delivered to the scrivener with direction to "retain

them and ·deliver them to the respective grantees after his death," and it was held that the estate vested in the respective grantees from the time of the execution of the deeds. *Foster v. Mansfield, supra.* ` That case was followed in *Mather v. Corliss,* 103 Mass. 568, 571. To the same effect is *Ball v. Foreman,* 37 Ohio St. 132. In another of these cases a father executed and acknowledged a

"deed purporting to convey to his son a farm, placing it in the hands of B. with instructions to deliver it after the father's death, but not before unless both parties called for it, and after the father died B. delivered the deed accordingly. *Held,* that the title of the son took effect by relation from the time the deed was left with B., and that the son's quitclaim deed executed intermediate the leaving of the deed with B. and the father's death, though importing a mere conveyance of the son's right of expectancy in the land, would pass his title." *Tooley v. Dibble, supra.*

A recent text-writer, after stating that the question whether a deed duly executed and acknowledged and then delivered into the custody of a third party is to be regarded as an escrow or a present deed "will depend upon the *intent* of the parties, and the words used and purposes expressed as indicative of that intention," draws this distinction as being recognized by the cases:

" "If the payment of money or the performance of some other condition is the circumstance upon which the future delivery is to depend, the instrument is an escrow; but where the future delivery *does not depend* upon the performance of any condition, but it is deposited with a third person *merely to await* the lapse of time or the happening of some contingency, it will be deemed the grantor's deed presently." 1 Devlin, Deeds (2d ed.) § 319.

This court has held:

"Where a deed is duly executed and delivered by the grantor to a depositary in the presence of the grantee, without any reservation of control, and with the intention and understanding that such depositary is to retain the custody thereof

Vol. 132 — 6

until the grantor's death and then deliver the same to the grantee, it is the grantor's deed *in præsenti* from the time of such deposit, and the depositary thereby becomes the trustee of the grantee." *Albright v. Albright,* 70 Wis. 528, 36 N. W. 254.

In that case it was held that the subsequent destruction of the deed by the grantor did not divest the title of the grantee, who was his wife. Id. The same principle was recently applied by this court in a case where the grantor, a bedridden man, deposited the deed, running to another person, with his wife, with the necessary intent to place the instrument out of his own control for the benefit of the grantee named in the deed. *Kittoe v. Willey,* 121 Wis. 548, 99 N. W. 337.

The case at bar comes squarely within the principles of the cases cited. The deed in question was deposited by the grantor with Henry Ludlow under the circumstances stated, and the same was retained by him until five days after the death of the grantor, and then in pursuance of his written directions he delivered the same to the defendant *Thomas B. Wells* as mentioned. We are constrained to hold that upon such delivery to Henry Ludlow the deed became the present deed of Peter Wells, and that upon the delivery thereof by Henry Ludlow to *Thomas B. Wells* the title to all of the real estate therein described became vested in him absolutely and in fee, as held by the trial court.

*By the Court.*—The judgment of the circuit court is affirmed.