NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY vs. WRIGHT and another, Executors, Appellants, and KELLER and another, Respondents.

*March 15—April 8, 1913.*

*Life insurance: Transfer of interest in policy: Validity: Delivery of duplicate assignment to company: Presumption of acceptance by assignees: Retention of policy.*

1. The assured executed an "original" and a "duplicate" assignment to his mother and sister of all his right, title, and interest in a life insurance policy, reserving to himself, however, the right to exercise, for his own benefit and without the consent of the assignees, any of the tontine options provided for in the policy. The consideration expressed was "love and affection." In accordance with a provision in the policy and instructions from the insurance company he delivered the duplicate to the company to be filed, and attached the original to the policy. This was done with intent to pass the title, but he retained the papers in his own possession. Afterwards he made declarations—once in the presence of the assignees—that he had provided for them with the policy. Near the end of the tontine period he applied to the company for a loan on the policy but, on being informed that the consent of the assignees would be necessary, abandoned the matter. By his will he gave all his property to his wife and children, not mentioning his mother and sister or the policy. *Held*, that there was a complete transfer of title according to the terms of the assignment.

2. Retention of the policy in such case was not inconsistent with a transfer of title, being well explained by the fact that an interest was retained by the assignor.
3. Delivery of the written evidence of the assignment to the insurance company, with intent to transfer a right to a part or all of the insurance, was a good delivery to the assignees, their acceptance being presumed from the beneficial character of the transaction.
4. The insurance itself, not the mere policy or evidence of it, is the subject dealt with in such a transaction.

APPEAL from a judgment of the circuit court for Milwaukee county: JAMES WICKHAM, Judge. *Affirmed.*

Equitable action to determine ownership of the proceeds of a $10,000 policy of insurance on the life of Charles A. Wright.

*Lillian E. Hester,* sister, and *Emily S. Keller,* mother of the deceased, claimed the fund as assignees of the policy, while the personal representatives claimed the same upon the ground that, assuming the deceased attempted to assign the policy, it was not effective for failure to part with dominion over the same. Plaintiff paid the money into court, and was discharged from liability. The mother assigned her interest to the daughter and the litigation proceeded to a termination between the personal representatives and *Lillian E. Hester,* resulting in the latter prevailing.

The evidence was this, in substance: July 13, 1896, plaintiff issued the policy. It was on the semi-tontine plan, payable to the personal representatives or assignees of the assured. It contained a stipulation permitting him, at the expiration of fifteen years, the policy then being in force, to exercise either of five options as to the surplus, also this condition: "If this policy shall be assigned a duplicate of the assignment shall, within thirty days, be given to the company and due proof of interest shall be produced upon making claim."

April 21, 1899, the assured made, in due form, an assign-

ment in duplicate, purporting to convey the policy to *Emily S. Keller,* his mother, and *Lillian E. Hester,* his sister, reserving the right to exercise any of the options for his own benefit, without consent of the assignees, providing for a right of survivorship as between them, and for the policy to go to his estate in case of neither of the assignees surviving until maturity of the policy. The consideration expressed was "love and affection." One of the papers was marked "Original" and the other "Duplicate." The forms were prepared by plaintiff for such matters and sent to agents to enable them to accommodate policy-holders. The forms were in sets, one to be regarded as the original and the other a duplicate. At the foot of the former there were these words of instruction: "This original should be attached to the policy," and at the foot of the latter: "This duplicate must be sent to the home office to be filed." The executed paper marked "Duplicate" was so sent by the assignor, placed on file, and duly receipted for to him. *Mrs. Keller,* in January, 1912, was seventy-seven years of age. In 1905, the assured said to a friend that he had provided for his mother and sister with the insurance policy. In 1907, in the presence of his sister, his mother, and her husband, the assured's stepfather, he made a like declaration. In 1910, he applied to plaintiff for a loan on the policy; but, upon being informed that consent of the assignees would be necessary, abandoned the matter. At about this time he was solicited by plaintiff's agent to take additional insurance and asserted that his mother and sister were provided for by the insurance he had, and that, as to the rest of the family, there was enough. He died testate May 17, 1911. The will, in terms, exhausted all his property in provisions for his wife and children. The insurance policy with the assignment aforesaid, executed with all formalities, including government revenue stamps to the amount of $8, was found in his safety deposit box. There was found in the same box stock certificates belonging to

*Lillian E. Hester.* The findings of fact were in accordance with the foregoing.

For the appellants there were briefs by *Ball & Stone* and *Doerfler, Green & Bender,* and oral argument by *Harrison S. Green* and *Walter H. Bender.* They cited, among other authorities, 19 Am. & Eng. Ency. of Law (2d ed.) 94; *Foster v. Gile,* 50 Wis. 603, 7 N. W. 555; *Northwestern M. L. Ins. Co. v. Collamore,* 100 Me. 578, 62 Atl. 652; *Trough's Estate,* 75 Pa. St. 115; *In re Crawford,* 113 N. Y. 560, 21 N. E. 692; *Scott v. Dickson,* 108 Pa. St. 6; *Spooner's Adm'r v. Hilbish's Ex'r,* 92 Va. 333, 339, 23 S. E. 751; *Ingersoll v. Pond,* 108 Va. 179, 60 S. E. 738; *Williams v. Chamberlain,* 165 Ill. 210, 46 N. E. 250; *Weaver v. Weaver,* 182 Ill. 287, 55 N. E. 338; *Huestis v. Prudential L. Ins. Co.* 127 App. Div. 903, 111 N. Y. Supp. 461; *Morrill v. Manhattan L. Ins. Co.* 183 Ill. 260, 55 N. E. 656; *Hayes v. Boylan,* 141 Ill. 400, 30 N. E. 1041; *Chadwick v. Webber,* 3 Greenl. (Me.) 141, 14 Am. Dec. 222; *Dudley v. Nickerson,* 107 Me. 25, 78 Atl. 100; *Dexter S. Bank v. Copeland,* 77 Me. 263; *Opitz v. Karel,* 118 Wis. 527, 533, 95 N. W. 948.

For the respondents there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *F. L. McNamara.*

MARSHALL, J. This appeal is governed by a few elementary principles,—principles so firmly established and so frequently applied that they need but to be stated. Therefore, we shall not discuss the numerous authorities cited to our attention, except in a general way, or refer to any considerable extent to precedents, other than to cite them.

In every transfer of title from one person to another there must be an actual or constructive delivery of the thing or paper title thereto from one to the other, with intention to pass title, and an actual or constructive acceptance, completing mutuality so as to end dominion on the one side and create it on the other.

In order to pass title, no physical transition of the thing involved, or paper representing it, from the old to the new owner is necessary; a tradition, good in law, is sufficient.    A delivery and acceptance may be good in law and there not be any physical circumstances of change direct from the old to the new one, or even present knowledge on the part of the latter.    The transition may be accomplished by acts or words, or both, showing intention to part with title and deprivation of dominion over the thing or paper calling therefor.    No particular act on the part of the vendee or assignee is necessary to complete the mutuality, disabling the vendor or assignor from recalling the title he intends to part with. The instrument of transfer may be delivered to a third person, with intention not to recall it, and the transaction be complete, even as indicated, without the new owner having present knowledge thereof.    The delivery to the third person and acceptance by him for the purposes of the transaction is a delivery to the new owner,—where such transaction is beneficial to the new owner, the law supplies the rest; acceptance by such new owner is presumed until the contrary is shown,— thus ending the dominion of the old owner and initiating that of the new one.    The following adjudications amply illustrate the foregoing: *Cooper v. Jackson,* 4 Wis. 537; *Tisher v. Beckwith,* 30 Wis. 55; *Bogie v. Bogie,* 35 Wis. 659; *McPherson v. Featherstone,* 37 Wis. 632; *Kittoe v. Willey,* 121 Wis. 548, 99 N. W. 337; *Wells v. Wells,* 132 Wis. 73, 111 N. W. 1111; *Whiting v. Hoglund,* 127 Wis. 135, 106 N. W. 391; *Bates v. Winters,* 138 Wis. 673, 120 N. W. 498; *Taft v. Taft,* 59 Mich. 185, 26 N. W. 426; *Eastham v. Powell,* 51 Ark. 530, 11 S. W. 823; *Shoplaw v. Ridgway's Adm'r* (Ky.) 60 S. W. 723.

It will be observed that the dominant circumstances in a case involving the question of whether, in a case of this sort, there was an efficient delivery, are whether the acts or words, or both, evince an intent to pass title, and whether dominion

over the subject was surrendered in favor of the new owner. Here those circumstances and the ultimate fact were found in favor of respondents.   So the question is, Are the findings in that regard warranted by the evidence?

There is no difficulty as to whether there was a sufficient consideration to support the transfer.   The two papers were duplicate originals.   The fact that one was denominated by a printed notation thereon "Duplicate" and the other "Original," does not give any particular significance to the latter over the former.   The intention to pass title by delivering one of the papers to the insurance company and attaching one to the policy, thus fully complying with all the regulations in the insurance contract, is quite manifest.   That is reinforced by the fact that the deposit of one with the company was made rather as evidence to it of a transfer having already occurred than as an essential step in making such transfer.   That is to say, such circumstance involved a written declaration of a consummated act.   From the beneficial character of such a transaction, acceptance is presumed until the contrary is shown.   Manual keeping of one of the papers was consistent with surrender of dominion over the subject dealt with to the extent of the interest therein which was assigned, because of Mr. Wright having reserved to himself a very substantial part of the insurance contract.   The right to enjoy all of the optional features, which awaited the expiration of the tontine period of fifteen years having been retained, he was as much entitled to hold the policy as the assignees subject to the rights reserved.   The fact that he applied for a loan on the policy after the assignment, does not militate greatly, if at all, against the otherwise manifest intent to assign, in part, since such application was made near the end of the tontine period,—at a time when he might well have thought his interest would be accepted as security for the amount sought to be obtained.   That both he and the insurance company supposed the policy, subject to the reservation, had passed to the as-

signees beyond recall, is clear, because the company refused to make the loan without their consent, and Mr. Wright refused to apply to them for leave to incumber their interest. That the whole policy was not assigned, is of no significance against respondents, since it was competent for Mr. Wright to assign part and retain part, according to his intent as shown by the papers executed. Moreover, retention by him of an interest in the policy is a circumstance in favor of respondents, as it explains why he retained the paper.

If in view of all the circumstances mentioned, there were anything left to show, conclusively, an executed intent on the part of Mr. Wright to divest himself of dominion over the insurance to the extent mentioned in the assignment, it is furnished by declarations to the assignees and others that he had made provision for the former out of the insurance. It is also significant that, while he showed much concern for the pecuniary welfare of his mother and sister after his death, he omitted mention of them in his will and any special reference therein to the policy. That is consistent only with the idea that they had been otherwise provided for by the insurance.

On the whole case, it seems quite clear that the delivery of one of the duplicate originals of the assignment to the insurance company was a good surrender of dominion over the policy to a third party for the benefit of the assignees. Mr. Wright could not thereafter have recalled what he had done without their consent, as he understood himself and the company. Thereafter it held the assignment to protect itself and as trustee of the assignees as well, and he retained the policy with the other duplicate assignment attached thereto as owner of the reserved interest therein and as trustee.

An examination of the authorities cited by counsel for appellants does not enable us to find anything therein particularly out of harmony with the foregoing. In no one of them are the facts the same as those here, and, if there be anything

said in any of them out of harmony with the principles stated, the principles, not the adjudications, must prevail. Every essential to a transfer of title, according to the terms of the assignment, is shown. There was a good consideration, a manifest intent to transfer title and a good delivery, notwithstanding the evidence of the insurance obligation, the policy, remained in Mr. Wright's possession. If the policy had been destroyed the insurance and interest of the assignees therein would have remained just the same.

The principles above stated,—that in case of an assignment, as in this case, retention of the policy is not inconsistent with a transfer of title, and is well explained by the circumstance that an interest is retained by the assignor; that delivery of written evidence of an assignment to the insurance company with intent to transfer a right to part or all of the insurance, is a good delivery to the intended new owner; and that the insurance, not the mere policy or evidence of it, after all, is the subject dealt with,—will be found well established as indicated by many adjudications. Those cited by counsel for respondents seem to have been well selected. Among them are the following in connection with others referred to therein: *Hurlbut v. Hurlbut,* 49 Hun, 189, 1 N. Y. Supp. 854; *Young v. Young,* 80 N. Y. 422; *Hutchings v. Miner,* 46 N. Y. 456; *Martin v. Funk,* 75 N. Y. 134; *Burges v. New York L. Ins. Co.* (Tex.) 53 S. W. 602; *McDonough v. Ætna L. Ins. Co.* 38 Misc. 625, 78 N. Y. Supp. 217; *Abegg v. Hirst,* 144 Iowa, 196, 122 N. W. 838; *Barnhouse v. Dewey,* 83 Kan. 12, 109 Pac. 1081; *Otis v. Beckwith,* 49 Ill. 121; *Colburn's Appeal,* 74 Conn. 463, 51 Atl. 139; *Wilson v. Hicks,* 23 Ont. Law Rep. 496; *Towle v. Towle,* 114 Mass. 167; *O'Neil v. Greenwood,* 106 Mich. 572, 64 N. W. 511; *Gould v. Day,* 94 U. S. 405.

We do not fail to note the distinction between the facts of many of the cases cited and the one before us, pointed out by counsel for appellants; but, they are mere differences in de-

tail bearing, mainly, on the evidentiary effect of circumstances as regards whether there was an intent to transfer title and a delivery, actual or constructive, good in law, to divest one of title and dominion over the subject dealt with by transferring such title and dominion to another. The fact that the insurance company in *Wilson v. Hicks, supra,* notified the assignee of the assignment and did not in this case, is not of any great significance. Neither is the fact that the assignment delivered to the company was marked "Original" instead of "Duplicate," nor that in *Hurlbut v. Hurlbut, supra,* there were two papers and both delivered to the insurance company, nor that in *McDonough v. Ætna L. Ins. Co., supra,* there was but one paper, and that was so delivered. All the decisions are to the effect that neither failure to deliver the assignment or policy into the manual possession of the assignee, nor retention of such possession by the assignor of the policy, is vital.

It is suggested by counsel that *Otis v. Beckwith, supra,* was modified in *Williams v. Chamberlain,* 165 Ill. 210, 46 N. E. 250, and overruled in *Weaver v. Weaver,* 182 Ill. 287, 55 N. E. 338. We do not find it so. The principle of the early case is affirmed in both the later ones. It is not referred to, specifically, in *Weaver v. Weaver.* Whether the mere delivery of a duplicate assignment to the insurance agent, according to a requirement of the policy in case of a transfer, is of itself conclusive of an intention to pass title and of disablement of the assignor to deal with the subject of the transaction under such peculiar circumstances as existed in the *Weaver Case,* is all that was there decided; while the general rule was most emphatically affirmed. The court quoted with approval from *Weber v. Christen,* 121 Ill. 91, 11 N. E. 893. "Did the grantee by his actions or words or both intend to divest himself of the title? If so, the deed is delivered."

It is quite useless to point out distinctions between a case in hand and previous adjudications here or elsewhere, there

being no distinction in principle. The keynote of an adjudication is the ruling principle. The details showing the particular facts ruled by some particular principle are helpful; but, in the end, it is the principle, not the detail circumstances, commonly evidentiary only, which is the important feature as to whether an existing adjudication is a safe guide to follow in a case, presently. Mere details may widely vary, as indicated in the cases cited, yet the ruling principle be the same. Where the circumstances show a clear intent to transfer title and an execution thereof by surrender of dominion over the subject dealt with, actually or constructively,—not necessarily a parting with the thing directly to the transferee,—so as to disable the old owner from efficiently recalling his act, the transaction is complete though, in case of an insurance obligation, as here, the evidence of the insurance remains in possession of the assignor.

*By the Court.*—Judgment affirmed.