## Turner v. Warren, Appellant.

[Marked to be reported.]

*Deed—Delivery—Husband and wife.*

Where an owner of land, prior to his marriage, executes a deed conveying land to his intended wife, and delivers it to her, the fact that the deed, both before and after the marriage, was kept in the husband's safe, does not affect the legal character of the delivery.

*Evidence—Competency of witness—Assignment of interest—Act of 1887.*

Under the act of May 23, 1887, P. L. 160, a witness, otherwise incompetent, may make himself competent by an assignment of his interest; whether such an assignment be in good faith is a question for the court, and the fact that the court permits such a witness to be sworn is a determination by the court of the good faith of the assignment.

*Deed—Husband and wife—Evidence—Attorney at law—Privileged communication—Erasure—Agreement to make will—Delivery of deed.*

An owner of land, prior to his marriage, executed a deed conveying the land to his intended wife. He also prepared a blank will to be signed by her after their marriage, devising the same land to him. The deed was acknowledged by the grantor, and handed by him to the husband of his intended wife's sister, who delivered it to the grantee. Subsequently the grantor and grantee were married, but before the marriage, the deed was deposited in the grantor's safe, where it remained until after the wife's death. The wife died without leaving children, and without having made a will. After her death, her husband took the deed from the safe. The wife's brother-in-law was present at the time, and saw that

the signature to the deed was untouched. Subsequently the husband, on taking out letters of administration on his wife's estate, placed the deed, with other of his deceased wife's papers, in the hands of his counsel, where they remained until after the husband's death, when an examination of the deed showed that the signature had been erased. *Held:*

1. That the evidence was sufficient to establish a delivery of the deed to the grantee.

2. That the fact that the deed was kept in the husband's safe was immaterial, and could not defeat the grantee's rights.

3. That the erasure of the grantor's signature after delivery of the deed was ineffectual to revest title in the husband.

4. That there was no violation of professional confidence for the husband's attorney to testify as to the delivery of the papers, and the condition in which they were found after the wife's death.

5. That the failure or neglect of the wife to make a will did not divest her legal title to the land.

Argued Feb. 5, 1894. Appeal, No. 421, Jan. T., 1893, by defendant, Lillian Warren, from judgment of C. P. Delaware Co., Sept. T., 1891, No. 83, on verdict for plaintiff, Sarah C. Turner. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment. Before CLAYTON, P. J.

At the trial it appeared that, on Oct. 12, 1885, John H. Irwin executed a deed conveying the land in question to Rebecca J. Elder, to whom at the time he was engaged to be married. Irwin acknowledged the deed before a notary in Philadelphia, and delivered it to Charles F. R. Heuckeroth, Miss Elder's brother-in-law, to be given to the grantee. On the same day Heuckeroth delivered the deed to her. In February, 1886, Mr. Irwin and Miss Elder were married and lived together until her death in December, 1887. About a month or six weeks after the execution of the deed Irwin handed a package of papers containing the deed in question to Heuckeroth with directions to place them in his, Irwin's safe, for Miss Elder, Heuckeroth being a manager for Irwin and having the combination to the safe. They remained in the safe until Mrs. Irwin's death, when Heuckeroth took them out and gave them to Irwin. Heuckeroth observed that the deed was then in the same condition as when he placed it in the safe, and that the signature was untouched. Irwin put the deed with other of his wife's papers in the hands of George E. Darlington, Esq.,

his counsel, where they remained until after Mr. Irwin's death in 1890. Mr. Darlington then discovered that the grantor's signature to the deed had been erased.

Two wills were prepared, with the deed, by Irwin's direction, to be executed, one by himself and the other by his future wife by the name of Rebecca J. Irwin, the latter devising the land in dispute to Irwin and reciting it as the wife's marriage portion.

Mrs. Irwin died without issue, and without having made a will, leaving as her heirs at law two sisters, Sarah C. Turner, the plaintiff, and Ella N. Heuckeroth, the wife of Charles F. R. Heuckeroth. Mr. Irwin died in 1890, leaving a will dated Nov. 26, 1889, in which he devised all his estate, real and personal property, to Lillian Warren, the defendant. After Mr. Irwin's death, Ella N. Heuckeroth and her husband joined in a conveyance to Sarah C. Turner, the plaintiff, of their interest in the property described in the deed.

At the trial, Mr. Darlington took the stand as a witness for plaintiff, and the court permitted him, under objection and exception, to produce and offer in evidence the deed which had been left in his possession by Mr. Irwin, his client, and to testify to the fact of its preparation and the circumstances under which it came into his subsequent possession, and the condition in which it was when he received it back. [1, 2]

The court also permitted, under objection and exception, Charles F. R. Heuckeroth to testify, on behalf of plaintiff, to facts tending to prove the delivery of the deed by Irwin to Miss Elder in his lifetime. [3]

The court charged in part as follows:

" The principal question in this case is the delivery of this deed. [The consideration of the deed, which does not appear by the deed, appears to be the consent of the grantee to marry the grantor. That is a good consideration in law, and it seems to have been paid. Here is a case, then, of a deed, the consideration of which was marriage. The consideration is proved to have been received by the grantor, and the deed now appears to be in a canceled condition.] [4, 5] . . .

" [Was this deed delivered to the grantee? Now the fact that she afterward married the man, for which this deed was part consideration, you may consider as some evidence bearing

upon that subject.] [7]   [Without the evidence of Mr. Heuck-eroth the only evidence of delivery would be the fact of the payment of the consideration, without his testimony; with his testimony, if you believe it, the plaintiff would seem to be entitled to a verdict. If you don't believe him, then you will have to look at the other circumstances in the case to see whether there was a delivery of this deed, and the only evidence is the deed itself, and the fact that the consideration had been received.] [8] . . . .

" [ If you therefore come to the conclusion that this witness is not to be believed, the only evidence you have of the delivery of this deed is the fact that it was duly executed, and has been found among the papers of the man who would have a right to the deed as tenant by the curtesy.] [9]   If it ever had been delivered, the cancellation does not render it void. If it never has been delivered it is no deed. That is all I have to say to you upon that subject.

" I do not intend to comment on these wills or whether there was a private understanding that he should make a will to her and she to him. [She had a right to revoke her will; he had no right to revoke his deed.] [6]   A will does not take effect until after you die, and you may revoke it the last minute of your life if you have sense enough to know what you are doing, but a deed you cannot revoke after having been delivered."

Defendant's points were among others as follows: .

" 6. The plaintiff has not shown any evidence of title to the lands in controversy to justify a recovery by her in this action, and the verdict should therefore be for the defendant." Refused. [10]

7. Request for binding instructions. Refused. [11]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, (4–11) instructions; quoting instructions and offers of evidence but not quoting bills of exceptions or evidence.

*George P. Rich, Garrett E. Smedley* and *Mayer Sulzberger,* with him, for appellant.—Mr. Darlington was incompetent: Com. v. Moyer, 11 W. N. 34; Kaut v. Kessler, 114 Pa. 603 ; Whart. Ev. § 576 ; Moore v. Bray, 10 Pa. 519 ; Greenough v.

Gaskell, 1 M. & K. 102; Russell v. Jackson, 41 E. Ch. R. (9 Hare), 386.

Heuckeroth was also incompetent: King v. Humphreys, 138 Pa. 310; Crothers v. Crothers, 149 Pa. 201; Griggs v. Vermilya, 151 Pa. 429; Leiper v. Peirce, 6 W. & S. 555; Patterson v. Reed, 7 W. & S. 144; Phinney v. Tracey, 1 Pa. 173; Hatz v. Snyder, 26 Pa. 511; Swanzey v. Parker, 50 Pa. 441; Selover v. Rexford, 52 Pa. 308; Foreman v. Ahl, 55 Pa. 325; Fross's Ap., 105 Pa. 258; Warren v. Steer, 112 Pa. 634; Barbour v. Wiehle, 116 Pa. 308; Hans v. Palmer, 21 Pa. 296.

Heuckeroth was not rendered competent by reason of his conveyance of his interest under the act of May 23, 1887. Even if it be held that the words " a release or extinguishment " include " a conveyance " of the witness's interest, yet it is still submitted that Heuckeroth was an incompetent witness. Every assignment is deemed colorable until the contrary appear: Leiper v. Peirce, 6 W. & S. 555; Post v. Avery, 5 W. & S. 509; Phinney v. Tracey, 1 Pa. 173.

The court below practically instructed the jury that the real consideration of the deed, although it did not appear by the deed, was the approaching marriage of Irwin and Miss Elder, and that this was the sole consideration; that the marriage having taken place, Irwin had received the consideration, and that the deed must therefore be considered as executed and irrevocable. This was almost equivalent to giving a binding instruction. It entirely took away from the jury the conclusion which they would have been justified in reaching from the testimony, that the agreement under which the deed was executed was that Miss Elder should execute the will, devising this property back to her husband.

Whether or not there has been a delivery of a deed is generally a question for the jury. When, however, there is no evidence of delivery, the question should not be submitted to the jury: Galbraith v. Zimmerman, 100 Pa. 374; Critchfield v. Critchfield, 24 Pa. 100; Duraind's Ap., 116 Pa. 93; Dayton v. Newman, 19 Pa. 194; 3 Wash. R. Prop., 4th ed. 277; Wms. R. Prop. 147; 4 Kent, 454.

*V. Gilpin Robinson, George E. Darlington* with him, for appellee.—There is nothing in the testimony of Mr. Darlington

which can be strained in any way as violating the rule relating to confidential communications between attorney and client. Mr. Irwin was tenant by the courtesy of his wife's real estate, and as such would retain her title papers as the evidence of his title: Mange v. Guenat, 6 Whart. 141; Wms. Exrs. 724; Tompkin's Est., 6 Kulp, 99; Gibbons v. Fairlamb, 26 Pa. 217.

The court committed no error in charging the jury that the consideration of the deed was the marriage to Miss Elder, because this was an undisputed fact in the case.

The court below properly held that an execution and delivery of the deed would vest the title to the land in Mrs. Irwin, and a failure to execute the will could not defeat the title that had previously vested: Brown v. Bank, 3 Pa. 199; Cravener v. Bowser, 4 Pa. 262; Feely v. Hoover, 130 Pa. 112; 1 Greenl. Ev. § 568.

A deed regularly and solemnly executed, signed, sealed and delivered, vests the title in the grantee, and that title can never revest in the grantor except by conveyance equally as solemn: Cravener v. Bowser, 4 Pa. 262; Feely v. Hoover, 130 Pa. 112; Rifener v. Bowman, 53 Pa. 318; Withers v. Atkinson, 1 Watts, 249; May on Fraud. Con., pages, 458, 459, 475; 3 Washburn on Real Property, page 587; Sutton v. Jervis, 31 Ind. 265, 99 Amer. Dec. 633; Wilson v. Hill, 13 N. J. Eq. 143; Brown v. Bank, 3 Pa. 201.

If the deed were delivered (and this was the point submitted to the jury by the court below) then the presumption would arise, in the absence of any testimony to the contrary, that Irwin had waived his right to the execution of the will, or that the wife having refused to execute it, nothing more was done. Even evidence, unless in writing, that the failure to execute the will was unintentionally delayed until too late would not be sufficient to divest the wife's title: Cravener v. Bowser, 4 Pa. 262; Feely v. Hoover, 130 Pa. 112; Rifener v. Bowman, 53 Pa. 318; Withers v. Atkinson, 1 Watts, 249; May on Fraud. Con., pages 458, 459 and 475; 3 Wash. R. Prop., page 587; Sutton v. Jervis, 31 Ind. 265, 99 Am. Dec. 633; Wilson v. Hill, 13 N. J. Eq. 143.

Heuckeroth was competent: Hartman v. Ins. Co., 21 Pa. 476; Carter v. Trueman, 7 Pa. 324; Warren v. Steer, 112 Pa. 634; Act of May 23, 1887, P. L. 160; Heft v. Ogle, 127 Pa.

244; Barbour v. Wiehle, 116 Pa. 315; Thompson's Ap., 103 Pa. 607; Walden v. Finch, 70 Pa. 464; Rothrock v. Gallaher, 91 Pa. 113.

OPINION BY MR. JUSTICE GREEN, March 19, 1894.

This action was an ejectment for thirty-four acres of land in Delaware county. Both plaintiff and defendant claimed title from John H. Irwin. The plaintiff gave in evidence a deed for the land in dispute dated October 12, 1885, to Rebecca J. Elder, who died intestate and without issue, and the title to the land described in the deed passed under the intestate law to her two sisters Sarah C. Turner and Ella N. Heuckeroth. Mrs. Heuckeroth subsequently conveyed to Mrs. Turner her undivided one half interest in the land, thus vesting in the plaintiff the whole estate. John H. Irwin, the grantor in the deed to Rebecca J. Elder, died in 1890, leaving a last will in which he devised all his estate, real and personal, to the defendant. The question is, which title shall prevail, that of the grantee in the deed or that of the devisee under the will?

At the time the deed was executed Irwin was engaged to be married to Rebecca J. Elder, and in view of the approaching marriage conveyed this land to her on the agreement that after their marriage she should make a will devising the land to him in case he survived her. In about four months after the execution of the deed they were married, and in less than two years thereafter she died leaving no children. There is no evidence that she ever made the will contemplated by both when the deed was made.

It is objected by the defendant that there was no sufficient evidence of the delivery of the deed. As to this the testimony showed that the deed was prepared by Mr. Darlington, Irwin's counsel, at his, Irwin's, request, and sent by him to Irwin by mail; that on the day it bears date, Irwin, in company with Charles F. Heuckeroth, husband of Miss Elder's sister, went before a notary of Philadelphia and duly acknowledged the deed in the presence of Heuckeroth, to whom he then handed it to be by him delivered to Miss Elder, and on the same day he did deliver it to her. About a month or six weeks after this Irwin handed this deed with others in a package of papers to Heuckeroth, with directions to place them in his, Irwin's,

safe, for Miss Elder, Heuckeroth being a manager for Irwin and having the combination to the safe. They remained in this safe until after Mrs. Irwin's death, when, at the request of Irwin, Heuckeroth took them out and delivered them to him. The deed was then in the same condition as when put in; the signature was untouched. Mr. Irwin put the deed with other of his deceased wife's papers, soon after, in the hands of his counsel, Mr. Darlington, where they remained until after Mr. Irwin's death in 1890. On examination then Mr. Darlington discovered that the grantor's signature to the deed had been erased. If Mr. Darlington and Mr. Heuckeroth were competent witnesses, certainly their evidence proved a delivery of the deed to the grantee, and, in view of the marital relation which soon after commenced between them, the possession of the deed was not inconsistent with such delivery. That a husband should place his wife's papers in his safe, and that they should remain there until her death, needs no explanation, for it is entirely free from suspicion or doubt. As between strangers it would be improbable that the grantee in a deed would permit it, after delivery, to remain in the possession of the grantor. It is not so however where the grantee is the wife of the grantor, and he has a safe for the keeping of valuable papers. Care would in such case prompt the wife to deposit the deed in her husband's safe.

As to the objection to the competency of Mr. Darlington as a witness on the ground that the communications of Irwin to him after his wife's death were privileged, being his counsel, we do not think it can be sustained. Irwin consulted him with a view of taking out letters of administration on his wife's estate, and handed him the papers belonging to her, among them this deed. There was no communication made which is protected by the confidential relation ; the delivery of the papers, the date of the delivery, and by whom delivered and in what condition they were found after Mrs. Irwin's death. No professional confidence was violated in testifying to these facts. As administrator of his wife's estate he and his counsel were representatives of that estate and not of Mr. Irwin individually.

Then as to the objection to Heuckeroth's testimony on the ground of interest as the husband of Mrs. Irwin's sister, who had by intestacy an interest in the land, we can only say the

act of May 23, 1887, clearly makes him competent on an assignment of his interest. Whether such assignment be in good faith is a question for the court. Heuckeroth testified absolutely that it was in good faith, that there was to be no reconveyance. The court permitted him to be sworn, leaving his credibility to the jury. In effect this was determining the good faith of the assignment by the court.

The evidence tending to show delivery of the deed was fairly submitted to the jury under proper instructions, and they found it was delivered. This vested the estate in the future wife from the moment of delivery. To revest it in the husband the mere erasure of his signature by himself, after his wife's death, was wholly ineffectual.

It seems very clear the negotiations preceding marriage culminated in an agreement that he would immediately convey the land to her by deed, and after marriage she would devise it to him, and she did not do so. But her failure or neglect to make a will could not divest her legal title to the land, unless there were proof of fraud, and there is no such proof in the case. At the time the deed was made, by his direction it was termed a marriage portion for his intended wife. The marriage was consummated and to that extent the purpose of the grantor was not disappointed. He knew his wife might not make a will, or if she made one might revoke or destroy it. He therefore assumed the risk that every expectant of benefits under a will runs, a change of mind in the donor.

Besides, the relation of this man and woman was wholly different after marriage from what it was at the time of the agreement. It was of a more confidential nature. Who can say that her neglect to make a will was not the result of an agreement between them after marriage, that an ante-nuptial arrangement was not abandoned by mutual consent.

We see nothing in any of the assignments of error that calls for a reversal of the judgment.

Judgment affirmed.