# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

NEW YORK LIFE INS. CO. et al. v. DUNLEVY.†

(Circuit Court of Appeals, Ninth Circuit.  May 18, 1914.)

No. 2349.

**1. APPEAL AND ERROR (§ 850*)—SCOPE OF REVIEW—NECESSITY OF FINDINGS.**

Where the trial court made no findings, an appellate court could not draw inferences from the testimony to establish ultimate facts, and hence a stipulation as to what a witness would testify if called would be disregarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3346, 3351–3362, 3375, 3376; Dec. Dig. § 850.*]

**2. APPEAL AND ERROR (§ 850*)—SCOPE OF REVIEW—NECESSITY OF FINDINGS.**

An agreed statement of facts, so far as it set forth ultimate as distinguished from evidentiary facts, might be considered as taking the place of special findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3346, 3351–3362, 3375, 3376; Dec. Dig. § 850.*]

**3. INSURANCE (§ 200*)—ASSIGNMENT—LAW GOVERNING.**

An assignment of an insurance policy is a contract distinct and separate from the contract of insurance, and is governed by the law of the place where the assignment is made.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 469; Dec. Dig. § 200.*]

**4. COURTS (§ 366*)—STATE LAWS AS RULES OF DECISION—CONSTRUCTION OF STATUTES.**

A decision of a state court, construing a statute of the state, is controlling in the United States courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

**5. INSURANCE (§ 211*)—ASSIGNMENT—DELIVERY—SUFFICIENCY.**

Where insured executed an assignment of an insurance policy to his infant daughter, and delivered a duplicate copy of the assignment to the insurance company, retaining possession of the policy and never informing the daughter of the assignment, there was a sufficient delivery of the assignment to vest title in the daughter, since the essentials of a delivery are those which accord with the nature of the

---

transaction, the circumstances and the relations between the parties, and while the mere execution of an assignment and delivery of a copy to the insurer without notice to the assignee would not in all cases be sufficient, it is sufficient if the assignee is the insured's wife or minor child.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 480; Dec. Dig. § 211.*]

6. INSURANCE (§ 219*)—ASSIGNMENT—EFFECT OF ASSIGNMENT.

An assignment of a tontine life insurance policy, providing for payment of a specified sum to insured if living on a certain date, and all dividend, benefit, and advantage to be had or derived therefrom, transferred to the assignee the tontine benefits, as well as the life benefits.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 488, 489, 494–496; Dec. Dig. § 219.*]

7. JUDGMENT (§ 17*)—PROCESS TO SUPPORT JUDGMENT—SUBSTITUTED SERVICE.

2 Purdon's Dig. Pa. (13th Ed.) p. 1551, par. 71, provides that when property levied on belongs to a person other than the defendant in the execution, a rule on the claimant to show cause why an issue should not be framed to determine the ownership shall be entered, and that notice of the rule shall be given plaintiff, defendant, and the claimant. Act April 6, 1859 (2 Purdon's Dig. [13th Ed.] p. 1422, par. 45) authorizes courts in certain cases to order any process served upon any nonresident defendant, provided such order limits a time after the service within which compliance with its requirement must be made, such process to be returnable at such time as the court shall direct. 1 Purdon's Dig. 244, requires writs for the commencement of actions to be made returnable on the first day of the next term, unless there shall not be 10 days between the issuance and the first day of the term when the writ may be made returnable on the day preceding the last day of the term or the first day of the second term. A judgment was recovered against a resident of Pennsylvania upon which execution was issued after she became a nonresident and an insurance company was garnisheed and alleged that defendant's father claimed to be the owner of the policy sought to be garnisheed. A rule to show cause was granted returnable February 26th, and served on defendant in California on February 18th, but there was no time limited after its service within which compliance therewith must be made, nor was the process made returnable by "special order" at a stated time after the service. *Held*, that the statute was not complied with, and the order directing the insurance company to pay the amount to defendant's father was void as to defendant, and did not defeat the company's liability to her, since statutes authorizing substituted service must be strictly complied with, and if the service is so defective as not to confer jurisdiction, the judgment is open to collateral attack.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25-33, 157, 422; Dec. Dig. § 17.*]

8. GARNISHMENT (§ 226*)—LIEN—EFFECT OF PROCEEDINGS.

Where a third person claimed to own an insurance policy garnisheed by a judgment creditor, and upon a trial of the claim of ownership the court found for the claimant, but the rule to show cause why the claimant and defendant in the execution should not interplead was not properly served on the defendant, who was a nonresident, the insurance company was not discharged of liability to the defendant to the extent of the creditor's judgment, on the theory that the lien created by the writ of garnishment still subsisted, since the court with jurisdiction of the judgment creditor, garnishee, and claimant determined that the writ created no lien on the proceeds of the policy, and that the money belonged to the claimant.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 421, 422; Dec. Dig. § 226.*]

Dietrich, District Judge, dissenting in part.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by Effie J. Gould Dunlevy against the New York Life Insurance Company and another. Judgment for plaintiff (204 Fed. 670), and defendants bring error. Affirmed.

The plaintiff in error issued a policy of life insurance to one Joseph W. Gould. The defendant in error, the daughter of Gould, as assignee of the policy, recovered judgment thereon in the court below. The parties to the action will be designated herein plaintiff and defendant, as they were in the court below. The policy was tontine, and it insured the life of Gould in the sum of $5,000, with the stipulation that if Gould were living on January 22, 1909, the policy might be surrendered for the sum of $2,479.70. It was for that sum that the plaintiff sued and recovered judgment in the court below. The case was tried before the court without a jury, upon the pleadings and an agreed statement of facts. In its answer the defendant set up two defenses: First, that the plaintiff was not entitled to maintain any action because Gould's assignment was never delivered to her, and because the assignment was not intended by Gould to transfer to her the tontine benefits to arise therefrom; second, because, by reason of certain garnishee proceedings instituted by creditors of the plaintiff in a state court of the state of Pennsylvania, the defendant had already been compelled to pay the full amount due under the policy. The date of the policy was January 24, 1889. On June 27, 1893, when the plaintiff was 13 years of age, and was living with her father, he made the assignment, which is as follows: "For value received, I hereby assign and transfer unto Effie J. Gould, of Pittsburg, Pa., the policy of insurance known as No. 305,011, issued by the New York Life Insurance Company upon the life of Joseph W. Gould, of Pittsburg, Pa., and all dividend, benefit and advantage to be had or derived therefrom, subject to the conditions of the said policy, and to the rules and regulations of the company." The assignment was signed, sealed, and acknowledged by Gould. The agreed statement of facts was as follows:

"That on or about the 27th day of June, 1893, defendant Joseph W. Gould, the assured in said policy, signed the instrument, a correct copy of which is set forth on pages 44 and 45, in Exhibit 'A' to the amended answer of defendant New York Life Insurance Company; that said policy remained in the possession of defendant Joseph W. Gould, the assured mentioned therein, and was never delivered to plaintiff herein; that said instrument, hereinbefore mentioned and set forth on pages 44 and 45 of said Exhibit 'A' to defendant New York Life Insurance Company's amended answer herein, was not, nor was any copy thereof, ever delivered to the plaintiff herein, but a copy of the same was delivered to defendant New York Life Insurance Company; that the notice attached to the said instrument contains a statement of the rules of defendant New York Life Insurance Company in force at the time of the signing thereof, and defendant New York Life Insurance Company executed the receipt therefor, as set forth on page 44 of Exhibit A to the amended answer of defendant New York Life Insurance Company as follows: 'The New York Life Insurance Company, in accordance with its rules, as stated below, has retained the duplicate of this assignment.

" 'John A. McCall, Pres. per Lawes.' "

It was also agreed, in substance, that Gould, if called as a witness would, subject to any legal objection as to the competency or relevancy of his testimony, testify in substance as follows: That his intention in executing the assignment and delivering it to the defendant was solely to protect the plaintiff in the event of his death prior to the expiration of the tontine period; that he wished her to receive the $5,000 only in the event of his death prior to January 22, 1909; that he had no intention of making an absolute assignment of the policy to her, and never delivered the assignment to her, but that the policy remained in his possession until he surrendered it to the defendant; that he delivered a copy of the assignment to the defendant by reason of

the notice appended thereto, and that the plaintiff had no knowledge of the execution of said assignment until notified by the defendant on the maturity of the policy; and that he paid all the premiums due or payable on the policy. In addition to the agreed statement of facts, transcripts were filed of certain proceedings in the court of common pleas of the county of Alleghany, state of Pennsylvania.

E. J. McCutchen, Warren Olney, Jr., Charles W. Willard, and J. M. Mannon, Jr., all of San Francisco, Cal., for plaintiff in error New York Life Ins. Co.

Frank W. Taft, Clarence Coonan, and Nat Schmulowitz, all of San Francisco, Cal., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] Before considering the assignments of error, it is necessary to determine what questions are properly before this court for decision. The record discloses no findings of facts, either general or special, in accordance with sections 649–700 of the Revised Statutes (U. S. Comp. St. 1901, pp. 525–570), and no requests for instructions. In the absence of findings by the trial court, inferences of facts to establish ultimate facts cannot be drawn by an appellate court from the testimony which may be found in the record. Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; W. L. Perkins Co. v. Von Baumbach, 185 Fed. 265, 107 C. C. A. 371; Streeter v. Sanitary Dist. of Chicago, 133 Fed. 124, 66 C. C. A. 190; Anglo-American Land M. & A. Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89. But the agreed statement of facts, so far as it sets forth ultimate facts as distinguished from evidentiary facts, may be considered as taking the place of special findings. Wilson v. Merchants Loan & Trust Co., 183 U. S. 121, 22 Sup. Ct. 55, 46 L. Ed. 113. It follows that the stipulation as to the testimony which would be given by Joseph W. Gould, if called as a witness in the present case, must be disregarded.

[3-5] It is contended that the court below erred in overruling the defendant's demurrer to the complaint, which was based upon the ground that there was contained therein no allegation of a delivery of the assignment to the plaintiff, or that she was notified or had knowledge of the assignment, also that, in the absence of proof of such delivery and notice to the plaintiff, the court erred in entering judgment against the defendant upon the agreed statement of facts. By the decided weight of authority it is held that an assignment of a policy is a contract distinct and separate from the contract of insurance, and is governed by the law of the place where the assignment is made. 2 Whart. Conf. of Laws, 467g, and cases there cited; Johnson v. Mutual Life Ins. Co., 180 Mass. 407, 62 N. E. 733, 63 L. R. A. 833; Russell v. Grigsby, 168 Fed. 577, 94 C. C. A. 61. The assignment in the present case was made in Pennsylvania, and if its validity depended upon a statute of that state, which had been construed by the courts thereof, such construction would be controlling here. The defendant cites the case of Scott v. Dickson, 108 Pa. 6, 56 Am. Rep. 192, a case in which the assured executed an assignment of the policy to one Scott, a friend, and

lodged a copy thereof with the insurance company in accordance with its rules, but no copy of the assignment was ever given to the assignee, nor was he notified thereof, and the policy remained in the possession of the assured, who paid the premiums on it up to the time of his death. It was held that the delivery of the assignment to the company was not the equivalent of a delivery to the assignee. But in so holding the Supreme Court of Pennsylvania construed no statute of that state. In Smith v. Hawthorn, 22 Pa. Co. Ct. R. 519, it was held that where a husband assigned a policy of life insurance to his wife and children, the fact that the policy and the assignment were found amongst his papers after his death was not sufficient to raise a presumption that the policy and the assignment had not been delivered. The court quoted with approval the language of the opinion in Turner v. Warren, 160 Pa. 336, 28 Atl. 781, where it was said:

"As between strangers it would be improbable that the grantee in a deed would permit it, after delivery, to remain in the possession of the grantor. It is not so, however, where the grantee is the wife of the grantor, and he has a safe for the keeping of valuable papers."

In Appeal of Madeira, 4 Atl. (Pa.) 908, the Supreme Court of Pennsylvania said that an assignment without valid consideration and a gift are equal, and added:

"The legal requisition is that the intention of the donor be established by clear and precise evidence, and that the delivery be secundum subjectam materiam."

And the court intimated that if there had been in that case an assignment of the policy to the wife of the insured, and it had been evidenced by nothing more than its deposit in a box or other receptacle common to the use of both husband and wife, there would be no doubt as to her right to the policy. While these decisions of courts of Pennsylvania are not controlling, we think they are in harmony with the doctrine that the essentials of a delivery of an assignment are those which accord with the nature of the transaction, the circumstances and the relations between the parties; that while the mere execution of an assignment and a delivery of a copy thereof to the insurance company without notice to the assignee, the assured continuing to hold the policy and pay the premiums thereon, would not in all cases be a sufficient assignment, it would be sufficient if the assignee sustained to the assured the relation of wife or minor child.

It has been held in other jurisdictions that the delivery may be constructive, and that an assignment of an insurance policy may be sustained where the intent of the assignor to assign is clearly shown, notwithstanding that the policy remains in his possession, and that filing the assignment or a copy thereof with the insurer, in accordance with its requirements to that effect, is a sufficient substitute for actual delivery to the assignee. In McDonough v. Ætna Life Ins. Co., 38 Misc. Rep. 625, 78 N. Y. Supp. 217, the court said:

"The assignments came to the office of the company, presumably, for the purpose of notifying the company that some one other than any of the parties to the contract of insurance claimed title to the policies. It was not an improper place to lodge the assignments. In the course of business, it was a very proper place, not only for safe-keeping, but to prevent the moneys upon

the policies, when they should grow due, from being paid to another. * * * If the assignor, the insured, sent them, then the presumption would be that he sent them for the benefit of the assignee. If that was the only delivery, it would be a good delivery, being for the benefit of the assignee."

See, also, Hurlbut v. Hurlbut, 49 Hun, 189, 1 N. Y. Supp. 854. In Northwestern Mut. Life Ins. Co. v. Wright, 153 Wis. 252, 140 N. W. 1078, the court said:

"The instrument of transfer may be delivered to a third person, with intention not to recall it, and the transaction be complete, even as indicated, without the new owner having present knowledge thereof. The delivery to the third person and acceptance by him for the purposes of the transaction is a delivery to the new owner; where such transaction is beneficial to the new owner, the law supplies the rest; acceptance by such new owner is presumed until the contrary is shown."

And in Burges v. New York Life Ins. Co., 53 S. W. 602, the Court of Civil Appeals of Texas held that actual delivery of an assignment of an insurance policy to the assignee, who was the assignor's adopted child, was unnecessary to validate the assignment. In that case the assignment was delivered to the insurer. The court said:

"Even in the absence of evidence of an actual manual delivery, we are warranted in holding that the facts and circumstances surrounding the donor and donee would constitute a delivery, within the meaning of the law."

The defendant cites decisions to the proposition that in order to invest an infant of tender years with title to property, there must be more than a mere execution of an instrument which the grantor retains in his custody, in the absence of satisfactory proof that it was his intention that such instrument should operate to convey the property immediately to the infant. But we find in the present case ample evidence of the intention of the assignor that the assignment should operate immediately. Everything that was necessary to carry out that intention was done. The assignment was signed, sealed, acknowledged, and lodged with the insurance company in compliance with its rules. The assignor was the natural guardian of the assignee, who was his daughter, and a minor, and was in his care and control. In retaining the papers in his possession, he should be deemed to have held them for her as her parent and guardian.

[6] But it is contended that there is absence of proof to show the intention of the assignor to assign the tontine as well as the life benefits of the policy. The only evidence which we have as to the assignor's intention is furnished by the language of the assignment itself. It recites that for value received, the policy "upon the life of Joseph W. Gould" is assigned, "and all the dividend, benefit and advantage to be had or derived therefrom." Language more apt could not have well been selected to transfer absolutely the whole interest of the insured in the policy, as well the life benefits as the tontine. The trial court correctly held, therefore, that the policy and all rights thereunder, had been assigned to the plaintiff.

[7, 8] It is contended that the plaintiff's cause of action is barred by the proceedings in the court of Pennsylvania, which are pleaded in the amended answer. In 1907, while the plaintiff was a resident of the state of Pennsylvania, Boggs & Buhl recovered judgment against her

for a debt, in a court of that state. Some two years later execution was issued upon the judgment, and Joseph W. Gould and the local agent of the defendant were garnisheed. The defendant in answering the writ set forth the fact of the issuance of the policy and the assignment thereof, and alleged that Gould claimed to be the owner thereof. Gould answered, claiming that the policy and all rights thereunder belonged to him. At that time the plaintiff had become a resident of the state of California. The statutes of Pennsylvania provide that when the sheriff is notified that the property which he has levied upon belongs to a person other than the defendant in the execution process, he shall enter a rule in the court, out of which the execution or process issued, on the claimant, to show cause why an issue should not be .framed to determine the ownership, and that notice of the rule shall be given to the plaintiff, the defendant and the claimant. 2 Purdon's Digest (13th Ed.) p. 1551. On February 5, 1910, on the petition of the garnishee, a rule was granted on the plaintiff and the defendant in the execution, and also upon Joseph W. Gould, the claimant, to show cause why they should not interplead, and why the insurance company should not be permitted, when it was determined to whom the money ought to be paid, to pay the same into court for the benefit of the person entitled to receive the same, and that service of a copy of the rule, petition, and the order be made upon Mrs. Dunlevy by serving her personally at her residence in California. The rule was made returnable February 26, 1910. It appears by an affidavit that on February 18, 1910, personal service was made upon her, in San Francisco. The papers served upon her were a copy of the petition of the insurance company, a notice of its attorneys, and a copy of the order of the court of date February 5, 1910, reciting that a rule was granted on Effie J. Dunlevy, Joseph W. Gould, and Boggs & Buhl, to show cause why they should not interplead together, for the purpose of ascertaining to which of the parties the money in the hands of the insurance company belonged, and the order recites:

"And it appearing that Effie J. Dunlevy is a resident of the state of California, it is hereby ordered and decreed that service of said rule upon Effie J. Dunlevy be by serving her personally with a copy of this petition and order, or by sending a copy of same by mail, or registered mail, to her at her last known address. Rule returnable the 26th day of February, 1910."

The only attestation of the order are the words appended thereto, "By the Court." Mrs. Dunlevy made no appearance in the proceeding, and on May 3d an order of the court was made, framing the issue, which was whether Joseph W. Gould made a valid gift of the policy to Effie J. Dunlevy. While the insurance company expressed its willingness to pay the money into court, it was not actually paid into court until March 19, 1910. On September 19, 1910, a jury returned a verdict in the cause entitled Boggs & Buhl, A. J. Gould, and Lincoln National Bank, Interveners, v. Joseph W. Gould, as follows: "We, the jurors, impaneled in the above entitled case, find a verdict for defendant." No judgment was ever entered upon the verdict of the jury, but upon October 1, 1910, the court ordered that the money be paid to Joseph W. Gould. Counsel for plaintiff contend that the service of the rule to show cause and the other papers was ineffectual to require the

plaintiff's appearance on those proceedings, and that the court never acquired jurisdiction of her. Where the object of an action is to determine personal rights only, and the proceeding is merely in personam, constructive service on a nonresident "is ineffectual for any purpose." Dull v. Blackman, 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733. But assuming that the proceeding in the court of Pennsylvania was a proceeding quasi in rem, the object of which was to determine to whom belonged the money that had been seized under the writ of the court, and that the money owing by the insurance company, notwithstanding that it had not been paid into court when the rule to show cause was made, was in legal effect in the possession of the court and subject to its judgment, we have to inquire whether the service was made in accordance with the laws of the state. The law to which we must refer is found in the act of April 6, 1859, 2 Purdon's Digest (13th Ed.) 1422, which provides that it shall be lawful for any court of Pennsylvania having equity jurisdiction of any suit concerning goods, chattels, etc., or liens, mortgages, or incumbrances thereon, or where any court has acquired jurisdiction of the subject-matter by service of its process on one or more of the principal defendants, to order and direct that any subpœna or other process in such suit may be served upon any defendant then residing out of the jurisdiction of the court, and upon affidavit of such service to proceed as fully and effectually as if the same had been made within the jurisdiction of the court. But the statute expressly provides that—

"such order limit a time, depending on the place where such process is to be served, after the service thereof, within which compliance with the requirements thereof must be made by such defendant or defendants; such process to be returnable at such time after the service thereof, as such court shall, by special order, direct."

The proceedings in the case under consideration fail in several respects to comply with these provisions of the statute. But the most vital defect is that the order wholly fails to limit a time, after the service thereof, within which compliance with the requirements thereof must be made, or to direct by "special order" that the process be returnable at a stated time after the service thereof. The order which was served upon Mrs. Dunlevy was returnable in the court of a distant state within eight days after the service upon her, while, if she had been a resident of that state and served therein, she could not, under the state law, have been required to appear and plead until 10 days after the date of the service. 1 Purd. Dig. [13th Ed.] p. 244. No default was taken against her, and nowhere in the proceedings of that court is there a recital or finding that service had been made upon her. The records show that from and after the return of the service upon her of the order to show cause, she was ignored in the proceedings. Substituted service upon a nonresident defendant being of statutory origin, the law must be strictly complied with (Jennings v. Johnson, 148 Fed. 337, 78 C. C. A. 329), and where the service is so defective as not to confer jurisdiction on the court, the judgment is open to collateral attack. Johnson v. Hunter, 147 Fed. 133, 77 C. C. A. 359; Guaranty Trust Co. v. Green Cove Railroad, 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116; Noble v. Union River Logging Railroad, 147

U. S. 165, 173, 13 Sup. Ct. 271, 37 L. Ed. 123. In Amy v. Watertown No. 1, 130 U. S. 301, 316, 9 Sup. Ct. 530, 536 (32 L. Ed. 946), the court said:

> "The cases are numerous which decide that where a particular method of serving process is pointed out by statute, that method must be followed."

And on page 317 of 130 U. S., on page 536 of 9 Sup. Ct. (32 L. Ed. 946) the court quoted with approval the following language of the Supreme Court of Wisconsin:

> "When the statute prescribes a particular mode of service, that mode must be followed. 'Ita lex scripta est.' There is no chance to speculate whether some other mode will not answer as well. This has been too often held by this court to require further citations."

Applicable to the contention of the defendant that, having paid the money into the Pennsylvania court, it discharged the debt, and was no longer concerned with the disposition of the money, is the following from Drake on Attachment, § 695:

> It follows, hence, that a garnishee must, for his own protection, inquire: First, whether the court has jurisdiction of the defendant; and, next, whether it has jurisdiction of himself. If the jurisdiction exists as to both, he has no concern as to the eventual protection which the judgment of the court will afford him; it will be complete."

In the proceedings upon the writ of garnishment, the garnishee had ample opportunity before it paid the money into court to discover that the defendant in the writ had not been duly served with process, and that the court had no jurisdiction over her.

It is suggested that the lien created by the writ of garnishment upon the fund owing by the insurance company on the policy still subsisted at the time when the judgment was rendered in the court below against the defendant herein, and that at least the amount of the debt owing to Boggs and Buhl, the judgment creditors, should have been deducted from the amount for which the judgment was rendered against the insurance company in the court below. To this it is to be said that the judgment in the garnishment proceedings, in which proceedings the court had jurisdiction of the judgment creditor, the garnishee, and the claimant, but not of the judgment debtor, finally disposed of the rights of Boggs and Buhl under that garnishment, and determined that their writ created no lien on the money which was in the hands of the insurance company, and that the money belonged to the claimant. With that judgment and the payment of the money to the claimant the jurisdiction of that court over the subject-matter of the present action came to an end.

We hold that the proceedings in the Pennsylvania court present no defense to the plaintiff's cause of action.

The judgment of the court below is affirmed.

DIETRICH, District Judge (dissenting). I concur in the view that we cannot consider certain testimony contained in the record; and in the further view that the Pennsylvania court never acquired jurisdiction to try the "feigned issue." But there being no averment of the actual or constructive delivery of the instrument of assignment to

the defendant in error, or to another for her use, it is thought that the complaint fails to state a cause of action, and that the judgment should therefore be reversed. This question is entirely distinct from that of the sufficiency of the proofs to warrant a finding of delivery, which, as I understand, is the question discussed in the opinion.

But if the sufficiency of the complaint be assumed, I still think the judgment should be modified by deducting therefrom the amount of the Boggs & Buhl judgment, including interest and costs. It is conceded that this latter judgment was regularly entered in a suit, in which the Pennsylvania court had plenary jurisdiction, and that thereupon execution-garnishment process was duly issued and properly served upon the plaintiff in error. In so far as concerns the amount of the garnishment claim, it was a case, therefore, falling squarely within the rule quoted in the opinion, with apparent approval, from Drake on Attachment. The court had jurisdiction of the defendant (the defendant in error here) and of the garnishee (the plaintiff in error here). Jurisdiction existing as to both, the garnishee could rest assured that by payment into court of the amount of the writ its protection would be complete. The fact that it paid in more than was required to satisfy the writ, and sought protection as to the excess through a "feigned-issue" proceeding, which was ineffective because jurisdiction as to such issue was not acquired over the person of the defendant in error, cannot operate to deprive it of the protection to which it was entitled upon yielding to the valid writ of garnishment. And as to the "feigned-issue" order or judgment, I am unable to see how it can be held void for want of jurisdiction in favor of one party and valid as against the other; if void as to one, it is void as to both. It is suggested that in that proceeding the court had jurisdiction of the judgment creditor and of the claimant, but in considering an issue between the plaintiff in error and the defendant in error, how can the presence of other parties operate to confer jurisdiction? I am unwilling to hold, in effect, that the plaintiff in error was, at the time of the proceedings in Pennsylvania, not indebted to the defendant in error, and thus enable her to escape her creditors there, and at the same time hold that it was and still is indebted to her, thus requiring it to pay the claim a second time.